99 A.3d 397

David **CRUZ**

v.

**WORKERS COMPENSATION APPEAL BOARD (KENNETT SQUARE SPECIALTIES and PMA Management Corporation).**

**Appeal of Kennett Square Specialties and PMA Management Corporation.**

Supreme Court of Pennsylvania.

Argued Nov. 28, 2012.

Resubmitted June 23, 2014.

Decided July 21, 2014.

32

Edward Ross Carpenter, Jr., Erin A. Padovani, Carpenter, McCadden & Lane, L.L.P., Media, for Appellant.

Amber Marie Kenger, Kathryn McDermott Speaks, Workers Compensation Appeal Board, Harrisburg, for Workers' Compensation Appeal Board, Appellee.

Larry Pitt, George Dallis Walker, Jr., Larry Pitt & Associates, P.C., Philadelphia, for David Cruz, Appellee.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION ANNOUNCING THE JUDGMENT OF THE COURT*

Justice TODD.

In this appeal, we are asked to address the proper allocation of the burden of proof as between an employer and a workers' compensation claimant regarding the injured employee's legal eligibility under federal immigration law to obtain suitable employment whenever the employer seeks to suspend workers' compensation disability benefits. For the reasons that follow, we hold that the Commonwealth Court correctly determined that Appellant, Kennett Square Specialties ("Employer"), bore the burden to prove that the loss of earning power of its injured employee, David Cruz ("Claimant") was due to his lack of United States citizenship or other legal work authorization in order to obtain a suspension of his workers' compensation disability benefits. We further hold that Claimant's invocation of his Fifth Amendment[1] right against self-incrimination when questioned at the hearing before the Workers' Compensation Judge ("WCJ") did not constitute substantial evidence of Claimant's alleged lack of legal authorization to be employed in the United States, and thus could

1. U.S. Const., Amend. V.

not, standing alone, furnish sufficient evidence for the WCJ to suspend Claimant's benefits. We therefore affirm the decision of the Commonwealth Court.

## I.

### Background

In July 2008, Claimant was employed as a truck driver for Employer, Kennett Square Specialties, which owned and operated a mushroom farm in Chester County, Pennsylvania. On July 19, 2008, as part of his work duties, Claimant was loading 15–20 pound barrels onto his truck when he felt something snap in his lower back. He promptly informed Employer of his injury and sought medical treatment from a physician designated by Employer. Medical examination revealed that Claimant had a herniated disk. As a result of this injury, Claimant's treating physician did not release him to resume his normal work duties, but, instead, ordered that he be restricted to lifting no more than 15 pounds, and also ordered that he undertake no work activities involving stretching, bending, or reaching. Employer, upon receipt of this information, informed Claimant that it had no position available which was compatible with these restrictions. Thereafter, beginning on August 8, 2008, Claimant no longer reported for work.

Employer issued a notice of temporary compensation payable[2] on August 8, 2008, and paid Claimant temporary workers' compensation benefits from that date until September 8, 2008, when it abruptly ceased payment and issued a formal denial of compensation notice. Claimant filed a claim petition on September 9, 2008, alleging, *inter alia:* his lower back injury was work-related, the back injury rendered him totally disabled and unable to perform his pre-injury job from the date of the injury, and his disability[3] was ongoing. Claim Petition, 9/9/08. Claimant sought compensation for lost wages

2. *See* 77 P.S. § 717.1(d).

3. As discussed further herein, under the Workers' Compensation Act, the word disability is synonymous with "loss of earning power." *Bufford v. W.C.A.B. (North American Telecom),* 606 Pa. 621, 2 A.3d 548, 556 (2010).

and for medical bills. Employer filed an answer to the petition on September 26, 2008 denying all of Claimant's allegations, and, additionally, reserved the right to raise "any and all defenses available to it under the provisions of the Workers' Compensation Act [4] ["(WCA")]," or "any additional defenses which become apparent during the pendency of this litigation." Appellant's Answer, 9/26/08, at 2.

A hearing was held before the WCJ on October 22, 2008. At the hearing, Claimant, under direct examination from his counsel, testified regarding his job duties, salary and working hours, circumstances of his injury, and his medical prognosis indicating he was incapable of returning to the job he had prior to his injury. N.T. WCJ Hearing, 10/22/08, at 1–23. Employer began its cross-examination of Claimant by asking him where he was born, and Claimant replied that he was born in Ecuador. *Id.* at 23. Employer next asked when Claimant came to the United States, and he answered that he had arrived 10 years previously. *Id.* At this point, Claimant's attorney objected to any further questioning regarding Claimant's citizenship or his ability to work, but the WCJ overruled the objection, opining "[t]he case law makes citizenship relevant." *Id.* at 24.

Employer then continued its cross-examination and asked Claimant if he was a naturalized citizen of the United States, whether he was an undocumented worker, and whether he possessed a "green card". *Id.* at 26. In response to each of these questions, Claimant, through counsel, invoked his Fifth Amendment right against self-incrimination.[5] *Id.*

4. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

5. We assume, for purposes of this appeal, that Claimant's counsel's assertion of his client's Fifth Amendment right against self-incrimination on his client's behalf constituted Claimant's personal invocation of the privilege, inasmuch as the lower tribunals and the parties have treated it as such, and as our grant of allocatur does not extend to this question. We, therefore, express no opinion on the merits of the matters raised by Justice Saylor in his Concurring Opinion regarding whether a testifying witness must personally invoke his or her Fifth Amendment right to refuse to answer a question, or whether the witness may do so through his or her counsel.

Subsequent to the hearing, the record was supplemented with depositions of Claimant's treating chiropractor and a physician selected by Employer to perform an independent medical examination. Prior to the closing of the record, Employer sought to take the deposition of Claimant on the basis of Employer's allegation that Claimant had improperly used his wife's social security number. Claimant's attorney canceled the scheduled deposition, and, although rescheduled, Employer's counsel did not timely appear at the second deposition. N.T. WCJ Hearing, 11/16/09, at 4. At the final hearing before the WCJ on November 16, 2009, Employer sought to question Claimant regarding his alleged use of the social security number, at which time Claimant, through counsel, renewed the assertion of his Fifth Amendment right, and no testimony was taken. Ultimately, Employer did not provide any evidence of record regarding Claimant's legal authorization to work in the United States.

Thereafter, the WCJ issued a decision in which he found that Claimant's injury was work related, and, also, that the extent of the injury rendered him partially disabled. Consequently, the WCJ ordered Employer to pay all of Claimant's reasonable and necessary medical expenses. However, the WCJ suspended Claimant's benefits from the date of Claimant's injury based on his finding that "[e]mployer has met its burden to establish that Claimant was not a United States citizen, and that he was not authorized to work in this country." WCJ Decision, 7/19/08, at 4 (citing *Reinforced Earth v. W.C.A.B. (Astudillo)*, 570 Pa. 464, 810 A.2d 99 (2002)).[6] Con-

---

6. In this decision, then-Justice Cappy wrote the lead opinion finding that an undocumented worker was not precluded from receiving workers' compensation merely because he did not possess the requisite authorization to work under federal immigration law; however, the lead opinion also found that an employer could seek to suspend those benefits without having to demonstrate a showing of job availability for the injured worker as required by *Kachinski v. W.C.A.B. (Vepco. Const. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). Justice Cappy's lead opinion was joined by then-Chief Justice Zappala, and now-Chief Justice Castille. Justice Newman, joined by Justice Eakin, dissented. Justice Nigro authored a concurrence agreeing that the employee was entitled to receive benefits and that the employer was not required to establish that it referred available jobs to him in order to suspend his benefits;

sequently, the WCJ suspended Claimant's disability compensation payments effective July 18, 2009, but he continued Claimant's medical benefits.[7]

Claimant appealed this decision to the Workers' Compensation Appeal Board ("WCAB"), which affirmed the WCJ in part, and reversed in part. With regard to the question of Claimant's citizenship status, the WCAB recited the general legal principle that a party cannot carry its burden of proof in a civil proceeding merely by relying on an adverse party's failure to testify. Thus, the WCAB found that the Employer did not meet its burden of proof in the instant matter regarding Claimant's citizenship status solely by relying on an adverse inference created by Claimant's failure to answer Employer's questions on the subject of his citizenship, as such an adverse inference, alone, was not sufficient evidence. The WCAB ruled that, since Employer provided no independent evidence to support its contention that Claimant was an undocumented worker, Employer was not relieved of its burden to show Claimant's earning power or job availability. Accordingly, the WCAB reversed the WCJ's order to the extent that it suspended Claimant's disability benefits.

> Justice Nigro additionally opined that "[u]nlike the majority, however, I believe that the Commonwealth Court properly addressed and considered Reinforced Earth's argument that the court should create a rule barring illegal aliens from receiving benefits based on a public policy against illegal immigration." *Reinforced Earth*, 810 A.2d at 109 (Nigro, J., concurring).
>
> Although the WCJ and the lower tribunals reference *Reinforced Earth* in their decisions, we find it has little application herein. Our Court did not purport in that decision to relieve an employer, which seeks to suspend an injured employee's benefits on the basis that he or she is a non-citizen without legal authorization to work in the United States, of the threshold burden of showing, factually, that the employee's loss of earning power was caused by this lack of legal work authorization. We had no occasion to opine on this question in that case, due to the fact that the employer therein produced specific evidence at the hearing before the WCJ in the form of an affidavit from an official of the Immigration and Naturalization Service ("INS") establishing the invalidity of employee's work eligibility documentation, and the injured employee did not contest the finding of the WCJ regarding his immigration status in his subsequent appeals.

7. Employer makes no challenge to the WCJ's award of medical benefits in this appeal.

The Commonwealth Court affirmed the WCAB's ruling in a unanimous published opinion. *Kennett Square Specialties v. W.C.A.B. (Cruz)*, 31 A.3d 325 (Pa.Cmwlth.2011). The court first reasoned that, under *Reinforced Earth*, an employee is not prohibited from receiving disability benefits under the WCA simply by virtue of his status as an undocumented worker; however, the court interpreted this decision as allowing suspension of such benefits whenever the employer demonstrates that the employee is capable of performing a modified duty job, without requiring an employer to show the availability of such work. *Id.* at 327.

Regarding the manner in which the WCJ handled the case, procedurally, the court found that the WCJ properly treated the Employer's response to Claimant's initial claim petition as a request for suspension of Claimant's benefits. Based upon that finding, the court further reasoned that, because Employer was the party seeking suspension of benefits, *it* had the burden of establishing the Claimant's eligibility status for employment, rather than the Claimant being required to establish, in support of his claim petition, that he possessed the necessary official documentation of his employment eligibility.

However, the court characterized the ultimate issue as "not whether the WCJ erred in suspending benefits based on the finding that Claimant is an undocumented alien, but rather, whether there is substantial evidence in the record to support the WCJ's finding that Claimant is an undocumented alien in the first place." *Id.* at 328. The court determined that the WCJ's finding in this regard was "based solely upon the adverse inference that the WCJ drew from Claimant's refusal to answer Employer's questions regarding his immigration status." *Id.* Citing our Court's decision in *Harmon v. Mifflin County Sch. Dist.*, 552 Pa. 92, 713 A.2d 620 (1998), discussed at greater length *infra*, in which we held that an adverse inference from a school employee's invocation of his Fifth Amendment right in response to questioning at a school board hearing was not substantial evidence to support a finding of fact to justify school board's termination of the employee, the

court concluded that the adverse inference drawn by the WCJ from Claimant's invocation of his Fifth Amendment right did not furnish sufficient evidence to support the WCJ's finding that Claimant was not a United States citizen, or that he was not otherwise authorized to work in this country.

In arriving at its holding, the court stated: "[t]he reason that an adverse inference cannot serve as substantial evidence to support a finding of fact is because an adverse inference does not constitute evidence, period." *Kennett*, 31 A.3d at 328–29. Consequently, the court concluded that, since an adverse inference was not evidence, it "does not count in calculating whether a party has met its burden in introducing substantial evidence." *Id.* Hence, the court determined that the WCJ erred in relying solely on the adverse inference in finding that Claimant was not a United States citizen, and that he was not otherwise legally authorized to work in this country. As the court found insufficient other evidence in the record to support this finding, it affirmed the WCAB's decision.[8]

Employer subsequently petitioned our Court for allowance of appeal, which we granted with respect to the following three issues:

[I.] Did the Commonwealth Court err in placing the burden of proof in a claim petition on the Employer, when the Claimant failed to establish his ongoing entitlement to benefits by providing information on his documented status to the Employer and to the court?

[II.] Did the Commonwealth Court err in failing to consider its own holding in *Brehm v. WCAB (Hygienic Sanitation Co.)*, 782 A.2d 1077 (Pa.Cmwlth.2001) which states that a claimant who refuses to provide either the court or his

8. The court also rejected the contention that an employer was not in a position to demonstrate an employee's immigration status, noting that employers, at the time of hiring a new employee, are required by the federal Immigration Reform and Control Act, 8 U.S.C. § 1324a, to verify the employee's immigration status by obtaining proof of citizenship or residence status and requiring the completion of an "I-9" immigration form for each worker. *Kennett Square,* 31 A.3d at 329 n. 12.

employer with information necessary to make a determination, may have his workers' compensation benefits suspended until such information is provided?

[III.] Did the Commonwealth Court err in concluding that [the] Workers' Compensation Judge's decision was not supported by substantial competent evidence where the record, in its totality, together with an adverse inference, does support the contention that the Claimant is an undocumented worker, thereby entitling the Employer to a suspension of benefits?

*Cruz v. W.C.A.B. (Kennett Square Specialties)*, 616 Pa. 549, 51 A.3d 183 (2012) (order). We will consider these issues seriatim.

## II. Analysis

### A. Burden of Proof

With respect to its first issue on appeal, Employer contends that it has always been the burden of the claimant to prove all of the elements necessary to support an award of benefits—i.e., that he was disabled from a work injury and that the disability continues for the duration of the claim petition proceedings. Appellant's Brief at 13 (citing, *inter alia, Inglis House v. W.C.A.B. (Reedy)*, 535 Pa. 135, 634 A.2d 592, 595 (1993) (holding that, "[I]n a claim proceeding, the employee bears the burden of establishing a right to compensation and of proving all necessary elements to support an award")). Employer maintains this burden remains on the injured employee to show his disability throughout the entirety of proceedings on a claim petition and never shifts to the employer; thus, Employer argues that the Commonwealth Court erred in holding that the burden of proof shifted to it. Employer reasons that, because a workers' compensation judge has the authority under Section 413 of the WCA, 77 P.S. § 772, to suspend or terminate disability benefits if the evidence so indicates, the judge may do so in proceedings on the employee's claim without the necessity of the employer filing a separate petition to terminate, and, thus, if the injured employee fails to present competent evidence in a claim proceed-

ing that his disability existed at all times, the employee's benefits may be modified, suspended, or terminated.

Employer contends, without citation to authority, that part of an injured employee's burden of proof of "disability" includes the requirement that he prove "that he is a documented worker, legally entitled to work in this country." Appellant's Brief at 13. Employer asserts that, because Claimant failed to provide any information regarding his documented status as a worker and repeatedly refused to answer questions on this subject during the hearings before the WCJ and in depositions scheduled by the WCJ, he failed to carry this burden and, thus, failed to prove his disability was caused by the work injury.

Claimant responds by arguing that, in a claim petition, an injured employee must establish two factors: (1) an injury sustained during the course of employment, and (2) the employee became disabled as a result of that injury. Appellee's Brief at 12 (citing *Inglis House* ). However, Claimant stresses that our Court has established that, even in a claim petition, once the injured employee has demonstrated a loss of earnings capacity because of a work-related injury, if the employer wishes to preclude the payment of benefits, it bears the burden of demonstrating "that employment is available within the claimant's restrictions." *Id.* (quoting *Vista Int'l Hotel v. W.C.A.B. (Daniels)*, 560 Pa. 12, 742 A.2d 649, 657 (1999)). Consequently, Claimant argues that Employer has incorrectly asserted that Claimant had the burden of proof to establish his citizenship or work authorization status in order to be successful in his claim petition.

Instead, Claimant contends that, because Employer raised this matter as a defense to his claim petition, it had the burden of proving that defense by substantial competent evidence in order to obtain suspension of his benefits, and it could not merely rely on an inference from his exercise of his Fifth Amendment right against self-incrimination. Claimant maintains that any inference drawn from the assertion of this right "does not alone establish the contention that the worker is undocumented and unable to lawfully work in the Common-

wealth." Appellee's Brief at 13–14. Therefore, Claimant argues, the Commonwealth Court properly concluded that Employer failed to carry its burden, inasmuch as it presented no other evidence at the hearing before the WCJ regarding Claimant's employment eligibility status. *Id.* at 14 (citing *Harmon, supra* ).

Our review of workers' compensation matters is limited to determining whether a constitutional violation, an error of law, or a violation of the Board's procedure has occurred, and whether findings of fact are supported by substantial evidence. 2 Pa.C.S.A. § 704; *City of Philadelphia v. W.C.A.B. (Kriebel)*, 612 Pa. 6, 29 A.3d 762, 768–69 (2011). When the issue under review concerns the proper interpretation of various statutory provisions of the WCA—a question of law—our standard of review is *de novo,* and our scope of review is plenary. *Bufford,* 2 A.3d at 551.

When interpreting the statutory components of the WCA, we are required to ascertain and effectuate the intent of the General Assembly. *See* 1 Pa.C.S.A. § 1921(a). The best indication of the General Assembly's intent may be reflected in a statute's plain language. *Martin v. Commonwealth, Dep't of Transp., Bur. of Driver Licensing,* 588 Pa. 429, 905 A.2d 438, 443 (2006). Of particular relevance in this matter, we are mindful that the WCA was intended to benefit the injured employee, and, therefore, must be construed liberally in the employee's favor in order to effectuate its humanitarian objectives. *City of Philadelphia v. W.C.A.B. (Williams),* 578 Pa. 207, 851 A.2d 838, 843 (2004). As a result, borderline interpretations will be decided in favor of the claimant. *Lancaster Gen. Hosp. v. W.C.A.B. (Weber–Brown),* 616 Pa. 333, 47 A.3d 831, 839 (2012).

As recited above, after Claimant informed Employer of his back injury, Employer issued a notice of temporary compensation payable, but, subsequently, pursuant to 77 P.S. § 717.1(5)(i), notified Claimant that it was ceasing payment. In response, Claimant filed a claim petition with the Department of Labor and Industry, to which Employer filed a

written answer. Consequently, as the Commonwealth Court found, the claim petition and the answer were the only formal filings before the WCJ at the time of the hearing, and Employer did not raise the question of Claimant's alleged ineligibility to be lawfully employed in the United States in its answer. Nevertheless, in *Vista*, we approved of the practice of a workers' compensation judge, in a hearing on a claim petition to determine a claimant's eligibility for workers' compensation benefits, simultaneously adjudicating an employer's request to suspend any benefits for which the judge determines the claimant is eligible. Therefore, Employer's failure to file a formal suspension petition did not preclude the WCJ from also considering, after making a determination that Claimant was eligible for benefits, whether Employer was nevertheless, entitled to a suspension of those benefits. *See Vista*, 742 A.2d at 658 n. 11 ("Workers' compensation judges are vested with the authority to render adjudications on claim petitions which incorporate aspects of modification, suspension or termination where the evidence so indicates, without the necessity of formal petitions by the employer.").

■ Thus, there were two discrete questions the WCJ ultimately considered in adjudicating the claim petition in this matter. First, the WCJ answered the specific question raised by the claim petition itself—whether Claimant, by virtue of his on the job injury, was eligible under the WCA for wage and medical benefits. Once the WCJ determined Claimant's injury entitled him to compensation, because Employer placed at issue during the hearing the question of whether Claimant's benefits should be suspended, the WCJ was also required to make a separate determination on that question. Therefore, the issue before us concerns the proper allocation of the burden of proof between the parties regarding each separate question.

■ Our Court has established that "entitlement to benefits under the [WCA] is contingent upon proof that the claimant suffered an injury or disease in the work place *and* the injury or disease affects his or her ability to earn a wage."

*Republic Steel Corp. v. W.C.A.B. (Petrisek)*, 537 Pa. 32, 640 A.2d 1266, 1268 (1994) (emphasis original). Consequently, a claimant seeking workers' compensation benefits via claim petition carries the burden of proof of establishing two things: (1) he or she was injured while in the course of employment, and (2) the injury resulted in a loss of earning power. *Bethlehem Steel Corp. v. W.C.A.B. (Baxter)*, 550 Pa. 658, 708 A.2d 801, 802 (1998); *accord Gibson v. W.C.A.B. (Armco Stainless & Alloy Products)*, 580 Pa. 470, 861 A.2d 938, 943 (2004) ("[I]n a claim petition proceeding, a claimant bears the burden of establishing a work-related injury and its causal effect on wage earning capacity."). Inasmuch as these are the **only** two things a claimant is required to demonstrate in order to successfully maintain a claim petition and obtain compensation for wage loss and medical treatment costs under the WCA, a claimant's eligibility to lawfully work in the United States is not a relevant consideration in establishing either of these factors. We therefore reject Employer's assertion that a claimant, as part of his or her burden of proof in a claim petition, is required to establish his employment eligibility status under federal immigration law.

Because Claimant produced sufficient evidence at the hearing before the WCJ to meet his burden of proof that he had sustained a work-related injury which rendered him incapable of performing his time-of-injury job, resulting in a loss of earning power entitling him to the payment of benefits, the WCJ was next required to determine whether Employer was entitled to a suspension of Claimant's benefits. The authority of a workers' compensation judge to suspend benefits derives from Section 413 of the WCA, 77 P.S. § 772, which provides, in relevant part:

> **§ 772. Modification, etc., of notice of compensation available, agreement or award on change in disability of injured person; exception as to eye injuries**
>
> A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or

its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed.

77 P.S. § 772.

 Because the WCA permits benefits only "where the disability, work related injury or disease results in a loss of earning power," a claimant's benefits may be suspended under Section 413 if the cause of his or her disability—i.e. loss of earning power—can be attributed to something other than the work-related injury. *Banic v. W.C.A.B. (Trans–Bridge Lines)*, 550 Pa. 276, 705 A.2d 432, 437 (1997) (quoting *Republic Steel*, 640 A.2d at 1270). Our Court previously has determined that, when an employer, which issued a notice of compensation payable, seeks to suspend benefits under Section 413 on the grounds that the claimant's disability is not related to the work-related injury, the employer has the burden of proof on this point. *Gumro v. W.C.A.B. (Emerald Mines)*, 533 Pa. 461, 626 A.2d 94, 97 (1993) ("Where an employer seeks to terminate benefits after the issuance of a Notice of Compensation Payable, the burden is on the employer to prove that the current disability is not related to the work-related injury."); *Beissel v. W.C.A.B. (John Wanamaker)*, 502 Pa. 178, 465 A.2d 969, 972 (1983) ("[A] petitioner has the burden of proving that an independent cause of an employe's disability arose **after** the filing of a notice of compensation payable if the petitioner is seeking to justify the termination of benefits on the grounds that the employe's disability is no longer work-related." (emphasis original)). Although the specific procedural circumstances of the present case differ in that the suspension question arose in the context of the WCJ determining whether a suspension of benefits he had just

awarded pursuant to the employee's claim petition was warranted, this difference does not compel a different result. *See Beissel,* 465 A.2d at 970 ("Under [Section 413], notices of compensation payable, agreements, and awards of referees are all treated the same."). Consequently, we find the holdings of *Beissel* and *Gumro* equally applicable in this instance, as, just as in those cases, it was the Employer which was seeking to suspend Claimant's benefits on the basis that his loss of earning power was not related to his work-related injury, and, thus, the burden of proof of this assertion properly was assigned to it. *Cf. Vista,* 742 A.2d at 657 ("Where a claimant establishes that a work-related injury prevents a return to the time-of-injury job, a loss of earnings capacity is established. Once such a loss has been demonstrated, the claimant should generally be entitled to benefits, **unless the employer can demonstrate** that employment is available within the claimant's restrictions." (emphasis added)).

▮▮▮ Contrary to Employer's contention, *Inglis House* does not suggest otherwise. In that case, the Commonwealth Court upheld reinstatement of an injured employee's benefits on the basis that the employee had demonstrated she sustained a compensable injury while at work, and the employer had not established that the employee was capable of obtaining other suitable work. We reversed. We concluded that the claimant had **not** carried her burden of proof in the hearing on her claim petition with respect to all of the elements required to establish her right to compensation: she had not demonstrated at the time of the hearing that she was suffering a continuing loss of earning power from the injury. We therefore held that it was impermissible to shift the burden of proof to the employer in the hearing to establish the existence of suitable work. In the case at bar, however, the WCJ found Claimant had established that, at the time of the hearing, he was still disabled—i.e., suffering a loss of earning power because of his work-related injury. Since Claimant met his burden of proof to establish his entitlement to benefits, the burden properly shifted to the Employer to show why its

request for a suspension of those benefits should be granted. *See Vista*, 742 A.2d at 658 n. 11 (contrasting *Inglis House*).[9]

■ Accordingly, we affirm the Commonwealth Court's determination that Employer bore the burden of proof of establishing, through competent evidence, that Claimant's loss of earning power was due to his employment eligibility status under federal law.

## B. Applicability of *Brehm*

We turn now to Employer's second issue. Employer argues that the Commonwealth Court failed to follow its prior holding in *Brehm, supra*. In that case, an injured employee's workers' compensation benefits were suspended after the employer introduced evidence at a hearing on its petition to modify benefits which indicated that its investigation had revealed that the employee was earning wages from another company during the period he was receiving benefits. The employer also produced the W–2 forms of the employee from the second company. While the employee acknowledged at the hearing that he had received some income for the period in question, he refused to provide copies of his tax returns and did not answer questions posed to him at the hearing relating to his income for the period in question. The referee suspended the employee's benefits for failing to provide information regard-

9. Likewise, *Hawkins v. W.C.A.B. (Med. Coll. of Pa.)*, 138 Pa.Cmwlth. 180, 587 A.2d 387 (1991), cited by Employer, does not compel a different result. First, as a decision of the Commonwealth Court, it is not binding on us, *see Commonwealth v. Sloan*, 589 Pa. 15, 907 A.2d 460, 466 (2006), and, second, it is, in any event, distinguishable. The injured employee in that case sought disability and medical benefits related to, *inter alia*, a back injury. At the hearing on her claim petition, the employee carried her burden of proof to establish that the back injury was work-related, but she failed to present competent medical evidence to carry her burden of proof that she was disabled solely as the result of this injury; thus, the referee suspended her benefits under 77 P.S. § 772 for this reason. By contrast, once again, the WCJ herein found that Claimant **met** his burden of proof to show that his back injury was both work-related and that he continued to be disabled at the time of the hearing as a result of that injury. The WCJ's suspension of benefits was based on his subsequent and separate finding that Claimant was suffering a loss of earning power not because of the injury, but because of his status as an undocumented worker.

ing his income. The Commonwealth Court upheld the suspension, holding that "a claimant who refuses to provide the financial information necessary to make a proper determination of his average weekly wage or information that is necessary to ascertain whether the claimant is working, may have workers' compensation benefits suspended until such information is provided and such a determination can be made." *Brehm*, 782 A.2d at 1085.

Employer asserts that the instant case is analogous to *Brehm* in that Claimant, like the injured employee in that case, was uncooperative in disclosing necessary facts which hampered the ability of the WCJ to properly consider the employee's claim petition. Employer avers that, just as with the income information in *Brehm*, the evidence of Claimant's eligibility to work was within his control and could easily have been produced by him. Thus, Employer argues Claimant's failure to testify regarding his employability status, and failure to produce other documents which could have verified and established that status, justified a suspension of his benefits by the WCJ pursuant to *Brehm*.

Claimant responds by arguing that, since it was not his burden to prove the defense Employer was raising, he had no obligation to introduce evidence with respect thereto. Claimant contends that, since Employer had the burden of proof to show Claimant's loss of earning power due to his immigration status, it could have carried its burden through evidentiary means other than its use of Claimant's invocation of his Fifth Amendment right. Claimant distinguishes *Brehm* on the basis that the employee in that case had, through his own testimony, presented evidence indicating he had received additional income from a second employer while he was receiving workers' compensation disability benefits from his first employer, and that there was other documentary evidence of record. Claimant reasons that, since the employee was the one who placed the contested matter at issue, his own testimony furnished additional independent evidence of record that he had additional income, apart from the mere negative inference arising from his refusal to provide his tax returns. Further,

Claimant points out that the information sought in *Brehm*— tax returns—is strictly confidential and not obtainable by an employer without the consent of the employee. Here, alternate means of obtaining information regarding Claimant's immigration status was available to Employer from other sources, but it did not obtain, nor present, such evidence.

We note, once more, that, *Brehm*, as a decision of the Commonwealth Court, is not binding on this Court. *Sloan, supra; Alliance Home of Carlisle v. Bd. of Assess. Appeals,* 591 Pa. 436, 919 A.2d 206, 227 n. 14 (2007). In any event, *Brehm* is distinguishable from this case as, in that case, the employer arguably met its burden of proof because it submitted substantial independent evidence of record regarding its investigation which revealed that the injured employee was receiving additional income from another company, which he did not reveal to his employer while also receiving workers' compensation. To establish this fact, the employer submitted into evidence at the hearing on its petition documentary evidence of this fact in the form of the employee's W–2's from the company. *Brehm,* 782 A.2d at 1083. Additionally, the employee, himself, through his own testimony corroborated the fact that he had received this extra, undisclosed income. At that point, once evidence of record had been introduced at the hearing to support employer's allegation that the employee's benefits should be suspended, the burden shifted back to the employee to rebut that evidence. Because employee failed to produce any evidence to rebut these facts, employer's evidence remained unchallenged on this matter, and, standing alone, was sufficient for it to carry its burden of proof that a suspension was warranted. By contrast, in the case at bar, Employer presented no independent evidence of Claimant's work eligibility status, nor was there any other evidence of record on this point. Due to the fact that Claimant, as discussed above, did not have the burden of proof on the suspension question, it was not obligated to produce evidence in this regard. *Wintermyer v. W.C.A.B. (Marlowe),* 571 Pa. 189, 812 A.2d 478, 484 n. 8 (2002). Consequently, we find *Brehm* inapposite.

### C. Sufficiency of the evidence to support WCJ ruling regarding Claimant's work eligibility

Having found the Commonwealth Court panel below was not bound by *Brehm*, we turn to Employer's final issue in which it contends the Commonwealth Court erred by finding the WCJ's decision was not supported by substantial evidence of record. Employer notes that Claimant testified that he was born in Ecuador and had lived in the United States for 10 years. Employer asserts that this fact, coupled with Claimant's refusal to testify regarding his immigration status, provided substantial evidence for the WCJ's conclusion that Claimant is an undocumented worker. Employer distinguishes our Court's decision in *Harmon* on the grounds that the school district in that case had the burden of proof, which it did not carry, and Employer reasserts its claim, which we rejected above, that it did not have the burden of proof in this matter. Correspondingly, Employer contends that Claimant was required to prove, pursuant to his claim petition, that his loss of earning power was solely caused by his work injury. Employer argues that, because Claimant did not provide evidence of his documented work status, he did not carry a requisite element of that burden of proof.

Claimant disputes that the adverse inference the WCJ assigned to Claimant's invocation of his Fifth Amendment right against self-incrimination was adequate substantive evidence, standing alone, to suspend his benefits. Claimant refutes Employer's assertion that he was either uncooperative in producing evidence regarding his work eligibility, or that such evidence was solely within his control. Claimant argues that it was not his burden to produce evidence on this point, and he further contends that Employer had other means by which it could introduce evidence regarding Claimant's work eligibility status since it possessed Claimant's I–9 form and supporting documents, which Claimant was required to furnish to Employer prior to employment under federal law and retain for three years. Claimant stresses that Employer did not introduce such evidence at the hearing before the WCJ, nor did it introduce any other evidence regarding his employ-

ment eligibility status. Claimant reiterates that the adverse inference the WCJ assigned to his failure to testify was insufficient for the Employer to carry its burden of proof, and, because Employer furnished no other evidence to corroborate the WCJ's adverse inference, Employer was not entitled to a suspension of benefits.

 As we have established above, to obtain suspension of Claimant's disability benefits on the basis of Claimant's status as an undocumented worker, the Employer bore the burden of proof to demonstrate that Claimant was ineligible to take other such jobs, by virtue of his lack of U.S. citizenship and lack of other legal employment authorization. It is undisputed that the sole "evidence" regarding Claimant's employment eligibility relied upon by the WCJ was Claimant's invocation of his Fifth Amendment right against self-incrimination in response to questioning from Employer's counsel. We find that the Commonwealth Court properly determined, based on our *Harmon* decision, that the adverse inference drawn by the WCJ from Claimant's invocation of his Fifth Amendment right against self-incrimination did not, by itself, constitute substantial evidence to support the WCJ's finding that Claimant was not a United States citizen, and was not otherwise authorized to work in this country.

In *Harmon*, a school employee was dismissed from his position after he refused to answer questions during personal interviews with school personnel regarding his alleged involvement in a criminal conspiracy to purchase marijuana, and also refused to answer questions at a school board hearing during which he invoked his Fifth Amendment right against self-incrimination. The Commonwealth Court affirmed the dismissal on the grounds that the employee's invocation of his Fifth Amendment right constituted "substantial evidence of improper conduct." 713 A.2d at 622. On appeal, we reversed.

We acknowledged that the United States Supreme Court in *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), held that the Fifth Amendment to the United States Constitution is not violated by a factfinder in a prison

disciplinary hearing granting a negative inference to a prisoner's invocation of his Fifth Amendment right against self-incrimination in response to evidence introduced against him. We noted that this inference "is akin to the well established rule in civil proceedings that a party's failure to testify can support an inference that whatever testimony he could have given would have been unfavorable to him." *Harmon*, 713 A.2d at 623. We observed, however, that under our caselaw, "the inference to be drawn from a party's failure to testify serves to *corroborate* the evidence produced by the opposing party," id. at 623–24 (emphasis supplied), and we pointedly reminded that "we have never suggested that a party could satisfy its burden of proof in a civil cause solely through reliance on the defendant's failure to testify." Ultimately, we held that the school employee's failure to answer questions "[did] not supplant the District's burden of presenting independent, probative evidence of [his] involvement in the asserted conduct," and we emphasized that "[a]bsent independent, probative evidence of the charged misconduct, the implications of [the employee's] refusal to testify on Fifth Amendment grounds are too broad and speculative to constitute substantial evidence." *Id.* at 625.

■■■ Likewise, in the case at bar, Claimant's invocation of his Fifth Amendment right against self-incrimination did not relieve Employer of its burden to present independent and probative evidence regarding Claimant's citizenship status and his corresponding employment eligibility. Employer presented no such evidence at the hearing before the WCJ. Although Employer now asserts that, because Claimant testified that he was born in Ecuador and had lived in the United States for 10 years, his invocation of his Fifth Amendment right "corroborates the fact that [he] is an undocumented worker," Appellant's Brief at 21, we expressly reject this argument. Merely because Claimant was born in a foreign county and arrived here over a decade ago does not *ipso facto* establish that he is not a U.S. Citizen, or not otherwise eligible to work in this country. As Employer presented no other evidence of record regarding Claimant's employment eligibility status, any infer-

ence drawn from Claimant's assertion of his Fifth Amendment right in response to questions on this topic was too speculative, standing alone, to constitute substantial evidence to establish that Claimant's loss of earning power was not related to his work-related injury and due, instead, to his status as an undocumented worker. Accordingly, we affirm the decision of the Commonwealth Court.

Order affirmed. Jurisdiction relinquished.

Justices BAER and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion in which Chief Justice CASTILLE joins.

Justice McCAFFERY joins that portion of the concurring opinion in which Justice SAYLOR expresses a receptivity to reexamination of Reinforced Earth.

Justice EAKIN files a concurring and dissenting opinion in which Justice STEVENS joins.

Justice SAYLOR, concurring.

I join the lead opinion insofar as it determines that the burden of proof fell to Kennett Square Specialties (Employer) to demonstrate that David Cruz (Claimant) was unable to obtain employment because of some reason other than his injury. *See* Opinion Announcing the Judgment of the Court (OAJC), *op.* at 408–09. Further, while I agree there was insufficient evidence to support the finding by the Workers' Compensation Judge (WCJ) that Employer carried its burden in this regard, my reasoning differs somewhat from that reflected in the lead opinion.

As the lead opinion recites, at the hearing Claimant testified that he was born in Ecuador and arrived in the United States approximately ten years ago. *See* OAJC, *op.* at 401; N.T., Oct. 22, 2008, at 23. Employer then asked several questions as to Claimant's work-authorization status, including whether Claimant was a naturalized citizen or had a green card, and whether he was an undocumented worker. These questions were not answered because Claimant's attorney objected to

them on grounds that the answers might incriminate his client. *See* N.T., Oct. 22, 2008, at 23–26. Upon review, the Commonwealth Court suggested Claimant's "refusal" to answer these questions was "the only evidence on which the WCJ concluded that Claimant was not authorized to work in the United States." *Kennett Square Specialties v. WCAB (Cruz)*, 31 A.3d 325, 328 (Pa.Cmwlth.2011). Based on that premise, the court held that the WCJ's conclusion was unsupported by substantial evidence, since adverse inferences from refusals to answer "do[ ] not constitute evidence, period." *Id.* at 329.

While I find that the Commonwealth Court reached the correct result based on the state of the record (discussed further below), I do not wholly endorse its analysis. Inferences do not exist in a vacuum, but stem from factual evidence. *See, e.g., Commonwealth v. Brown*, 617 Pa. 107, 147, 52 A.3d 1139, 1163 (2012) (referring to a fact-finder's ability to "draw reasonable inferences from basic facts to ultimate facts" (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979))). Thus, where a witness affirmatively refuses to answer a question on grounds that the answer might incriminate him, I would not assign absolutely no evidentiary value to such refusal. Indeed, the Supreme Court has observed as a general precept that refusals to answer, in a non-criminal setting and in reference to a question regarding potential criminality, are "relevant facts" that may be considered in the interest of "improv[ing] the chances for accurate decisions." *Baxter v. Palmigiano*, 425 U.S. 308, 319, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976).[1] Thus, if Claimant had, in fact, declined on Fifth Amendment grounds to answer the immigration-related questions posed by Employer, I might conclude that the adverse inferences arising from such refusals, combined with the other evidence of record, were adequate to sustain the WCJ's ruling. *See City of Phila. v.*

---

1. The Supreme Court's expression in *Baxter* related to silence in the face of an accusation. As a matter of logic, the same conclusion pertains to a refusal to answer on the grounds that a truthful answer may incriminate the witness. *Cf. Gray v. State*, 368 Md. 529, 796 A.2d 697, 715 (Md.2002) (observing that, even in criminal cases, invocation of the Fifth Amendment privilege has evidentiary value, albeit the fact-finder may be precluded from considering it).

*WCAB (Kriebel)*, 612 Pa. 6, 17, 29 A.3d 762, 769 (2011) ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *see also Vann v. UCBR*, 508 Pa. 139, 147, 494 A.2d 1081, 1085 (1985) ("The question of the sufficiency of the evidence to meet the [employer's] burden [of proof] must be examined *against the complete record.*" (emphasis added)).

A review of the hearing transcript, however, reveals that Claimant never refused to answer the immigration and work-authorization questions. Rather, his attorney interposed timely objections, after which Employer abandoned the issue and began a different line of questioning without ever insisting that Claimant answer or refuse to answer, or giving Claimant an opportunity to respond in any way. While this may seem like a technicality, we cannot surmise what Claimant would have said if he had been required to answer Employer's questions, and the attorney's objections were insufficient to invoke the Fifth Amendment privilege on Claimant's behalf. *Accord United States v. Schmidt*, 816 F.2d 1477, 1481 n. 4 (10th Cir.1987) ("Only the appellants, and not their counsel, are the proper parties to interpose a [Fifth–Amendment] claim of privilege[.]"); *see also Textron Fin. Corp. v. Eddy's Trailer Sales*, 2010 WL 1270182, at *3 (E.D.N.Y.2010) (citing cases and holding that a witness's attorney cannot invoke the Fifth Amendment privilege on behalf of his client because the privilege is personal); *State ex rel. Butterworth v. Southland Corp.*, 684 F.Supp. 292 (S.D.Fla.1988) (same); *see also State v. McGuire*, 272 S.C. 547, 253 S.E.2d 103, 105 (S.C.1979) (finding that a witness must personally invoke his Fifth Amendment privilege, and that a judge cannot invoke it for him). As for any suggestion by Claimant's attorney that the answers might incriminate his client, it may be noted that objections by counsel do not constitute evidence. *Accord, e.g., United States v. Serrato*, 742 F.3d 461, 466 (10th Cir.2014); *State v. Forrest*, 183 S.W.3d 218, 230 (Mo.2006). In light of the foregoing, there is simply no evidence of record, or even a "fact" of silence on Claimant's part, from which an adverse inference

may be drawn to be considered in conjunction with Claimant's testimony.

I recognize that we granted discretionary review, in part, to address the question, as framed by Employer, whether the WCJ's decision was supported by substantial evidence "where the record, in its totality, together with an adverse inference, [supports] the contention that the Claimant is an undocumented worker[.]" *Cruz v. WCAB (Kennett Square Specialties)*, 616 Pa. 549, 550, 51 A.3d 183, 183 (2012) (*per curiam*). However, "[c]ourts are intended to decide cases on the record made and the applicable law." *Dep't of Envtl. Res. v. Pa. Power Co.*, 461 Pa. 675, 695, 337 A.2d 823, 833 (1975) (internal quotation marks omitted). For the reasons expressed, I would find that the question posed by Employer makes the false assumption that facts exist in "the record made" from which an adverse inference may be drawn. That being the case, and in light of the paucity of other proofs on the question, I join the lead opinion's holding that the WCJ's conclusion pertaining to Claimant's work-authorization status was unsupported by substantial evidence.

Finally, I would be receptive, in an appropriate case, to reconsidering the soundness of *Reinforced Earth*'s determination that a worker's immigration status alone can present a lack of earning power for purposes of an employer's request to suspend benefits, so as to relieve the employer of the burden to demonstrate physical recovery from the injury. *See Reinforced Earth Co. v. WCAB (Astudillo)*, 570 Pa. 464, 479–80, 810 A.2d 99, 108 (2002) (Opinion Announcing the Judgment of the Court). The plurality made that suggestion by analogy to other circumstances such as incarceration, voluntary retirement, or a subsequent non-work-related injury, all of which could also relieve the employer of the same burden. *See id.* at 478–79, 810 A.2d at 107–08 (reviewing cases). Notably, the plurality's reasoning with regard to immigration is contained in a relatively brief paragraph that does not supply any focused analysis dealing with an injured worker whose only other "disability" involves his work-authorization status. *See*

*id.* at 479–80, 810 A.2d at 108.[2] Moreover, unauthorized work status is materially different from the other enumerated situations because, but for the injury, the worker might have been able to obtain similar employment elsewhere. *Accord Moyera v. Quality Pork Int'l,* 284 Neb. 963, 825 N.W.2d 409, 420 (Neb.2013) (listing cases in which courts have allowed benefits, concluding that "even if undocumented employees cannot legally work in the United States, they could have worked elsewhere but for their work-related injury"); *see also Economy Packing Co. v. Ill. Workers' Comp. Comm'n (Navarro),* 387 Ill.App.3d 283, 327 Ill.Dec. 182, 901 N.E.2d 915 (Ill.Ct. App.2009) (surveying cases).

Separately, and as the Commonwealth Court has noted, denying benefits on account of immigration status also tends to undermine federal immigration policy by giving employers an incentive to hire undocumented workers:

> [I]t would not serve public policy to deny workers' compensation benefits to an illegal alien merely because of their immigration status because all that would do is reward an employer who failed to properly ascertain an employee's immigration status at the time of hire. Further, to do so would potentially subvert any public policy against illegal immigration because employers may actively seek out illegal aliens rather than citizens or legal residents because they will not be forced to insure against or absorb the costs of work-related injuries.

*Reinforced Earth Co. v. WCAB (Astudillo),* 749 A.2d 1036, 1039 (Pa.Cmwlth.2000) (footnote and internal quotation marks omitted), *quoted in part in Reinforced Earth,* 570 Pa. at 471–72, 810 A.2d at 103; *accord Dowling v. Slotnik,* 244 Conn. 781, 712 A.2d 396, 404 (Conn.1998); *Economy Packing,* 327 Ill.Dec.

2. I recognize that Mr. Justice Nigro's concurrence, which I joined, expressed a similar viewpoint. *See id.* at 481, 810 A.2d at 109 (Nigro, J., concurring) ("I agree … that Reinforced Earth does not need to establish that it referred available jobs to Claimant in order for Claimant's benefits to be suspended[.]"). However, I now believe this position is worth reconsidering in the context of appropriately developed and focused advocacy.

182, 901 N.E.2d at 923.[3] As well, at least one court has observed that denying benefits on the basis of immigration status could undermine public policy in a different way, namely, by causing employers to "become lax in workplace safety." *Rajeh v. Steel City Corp.*, 157 Ohio App.3d 722, 813 N.E.2d 697, 703 (Ohio Ct.App.2004).[4]

For all of these reasons, I believe that it may be appropriate to revisit *Reinforced Earth*'s analysis in the context of a dispute in which the issue is properly raised.

Chief Justice CASTILLE joins this concurring opinion.

Justice McCAFFERY joins the portion of the concurring opinion in which Justice SAYLOR expresses a receptivity to reexamination of *Reinforced Earth.*

Justice EAKIN, concurring and dissenting.

I agree claimant carried his burden of establishing he suffered an injury in the course of employment that resulted in a loss of earning power. *See* Majority Op., at 42–48, 99 A.3d at 406–09. I respectfully dissent because I remain of the opinion workers' compensation benefits "should yield to the injunction of [c]ongressional policy against employment of unauthorized aliens ... [and] we should assume that the legislature did not intend to reward those who violate federal law in obtaining employment by allowing them to participate in a social insurance scheme for Pennsylvania workers." *Re-*

3. "[W]e do not believe that eligibility for workers' compensation benefits in the event of a work-related accident can realistically be described as an incentive for undocumented aliens to unlawfully enter the United States. Rather, excluding undocumented aliens from receiving certain workers' compensation benefits would relieve employers from providing benefits to such employees, thereby contravening the purpose of the [federal Immigration Reform and Control Act (the "IRCA")] by creating a financial incentive for employers to hire undocumented workers.... [C]ourts in other jurisdictions have almost uniformly held that the IRCA does not preclude undocumented aliens from receiving workers' compensation benefits." *Id.* (collecting cases).

4. There may also be a substantial equitable concern whereby an employer who knowingly benefits by hiring an unauthorized worker should be estopped from claiming an entitlement to a suspension of benefits on those same grounds.

*inforced Earth Company v. Workers' Compensation Appeal Board (Astudillo),* 570 Pa. 464, 810 A.2d 99, 111–12 (Pa.2002) (Newman, J., dissenting, joined by Eakin, J.). I thus believe that if an employer puts a claimant's immigration status at issue, the claimant must establish he or she is legally entitled to work in the United States as a prerequisite to obtaining benefits under the Workers' Compensation Act.[1] Since the claimant here failed to do so by refusing to testify regarding his immigration status, I would reverse the order of the Commonwealth Court.

Justice STEVENS joins this concurring and dissenting opinion.

1. I am not incognizant of the likelihood employer was aware of claimant's immigration status at the time claimant was hired and of the concomitant policy in permitting employer to "have its cake and eat it too" by shielding it from liability under the Workers' Compensation Act for being complicit in, if not an accomplice to, hiring unauthorized aliens contrary to federal immigration law. However, tougher employer sanctions for engaging in such behavior are to be found in the General Assembly, not this Court, and unauthorized aliens are not without recourse for injuries caused by their employer's negligence, because "[i]f an unauthorized alien is ineligible for benefits under the [Act], it follows that the employer should not enjoy the immunity from suit granted by 77 P.S. § 481 ... and [the employee] may sue the employer for injuries caused by the negligence of the employer." *Id.,* at 111 n. 4; *see also* 77 P.S. § 481(a) (emphasis added) (stating "liability of an employer *under this act* shall be exclusive and in place of any and all other liability to such employes").