# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Julius J. Cobbs, III,                    :
                     Petitioner       :
                                  :
         v.                               :
                                    :
City of Philadelphia (Workers'           :
Compensation Appeal Board),              :    No. 476 C.D. 2022
                     Respondent      :    Submitted: November 4, 2022


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                  FILED: January 9, 2023

       Julius J. Cobbs, III (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) April 20, 2022 order affirming the WC Judge's (WCJ) December 10, 2021 decision that granted the City of Philadelphia's (Employer) petition for modification of WC benefits (Modification Petition), thereby modifying Claimant's WC benefits from total disability to partial disability status as of August 6, 2020. Claimant presents three issues for this Court's review: (1) whether Act 111[1] can be applied to injuries that occurred before its October 24, 2018 effective date; (2) whether Act 111 is an unlawful delegation of legislative authority; and (3) whether Vinit K. Pande, M.D.'s (Dr. Pande) report and testimony provided a sufficient evidentiary foundation for the WCJ to grant Employer's Modification Petition. Upon review, this Court affirms.

---

[1] Act of October 24, 2018, P.L. 714, No. 111 (Act 111).

On August 28, 2013, Claimant was injured while operating a jack hammer in the course and scope of his employment for Employer's Water Department. On August 28, 2013, Employer issued a Medical-Only Notice of Compensation Payable, accepting Claimant's work injury as a lower back sprain. On August 3, 2018, Employer issued a Notice of Compensation Payable acknowledging Claimant's entitlement to wage loss and medical benefits.

In the interim, on June 20, 2017, the Pennsylvania Supreme Court issued its decision in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017) (*Protz II*), holding that the impairment rating evaluation (IRE) provisions contained in Section 306(a.2) of the WC Act (Act)[2] violated the nondelegation doctrine of the Pennsylvania Constitution and striking Section 306(a.2) in its entirety from the Act. The Pennsylvania legislature subsequently enacted Act 111, which became effective October 24, 2018. Act 111 repealed Section 306(a.2) of the Act, and reestablished the IRE process in Section 306(a.3) of the Act.[3] The IRE process has remained substantially the same as before, except that Act 111 requires that a physician use the American Medical Association's (AMA) Guides to the Evaluation of Permanent Impairment (AMA Guides), 6th edition (second printing April 2009) (6th Edition AMA Guides) when performing an IRE and allows for modification to partial disability status if a claimant has a whole-body impairment of less than 35%.

On November 9, 2020, Claimant filed a Petition to Review WC Benefits, alleging that the scope of his work injury should be expanded to include additional diagnoses. Employer filed an answer admitting that Claimant's August 28, 2013 work injury should be expanded. The matter was assigned to a WCJ who,

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, repealed by Act 111, and replaced by Section 306(a.3) of the Act.

[3] Added by Section 1 of Act 111, 77 P.S. § 511.3.

on December 15, 2020, issued an order approving and adopting a Stipulation of Facts (Stipulation) between the parties expanding the scope of work-related injury to include "lower back strain, L4-5 lumbar disc herniation, and exacerbation of pre-existing L5-S1 disc herniation." Reproduced Record (R.R.) at 100a.

On August 6, 2020, after Claimant received 104 weeks of WC disability benefits,[4] at Employer's request pursuant to Section 306(a.3) of the Act, Claimant underwent an IRE conducted by Dr. Pande. Based upon the 6th Edition AMA Guides, Dr. Pande determined that Claimant had reached maximum medical improvement relative to his accepted work injury, and his whole person impairment was 3%. *See* R.R. at 151a-152a. However, after reviewing additional records and the parties' Stipulation, which were not available to him on August 6, 2020, Dr. Pande concluded that Claimant had reached maximum medical improvement relative to his expanded work injury, and his whole person impairment rating was 17%. *See* R.R. at 154a-155a.

Based on Claimant's IRE results, on September 16, 2020, Employer filed the Modification Petition, seeking to change Claimant's indemnity benefits from total to partial as of August 6, 2020. On November 9, 2020, Claimant opposed the Modification Petition, generally denying Employer's allegations and requesting fees because Employer "has no contest." R.R. at 12a. The matter was assigned to a WCJ who conducted hearings on October 13 and November 17, 2020, and August

---

[4]    Under Section 306(a.3)(1) of the Act, an employer may not demand an IRE until after the claimant has received 104 weeks of temporary total disability compensation. [*See*] 77 P.S. § 511.3(1). Pursuant to Section 3(2) of Act 111, an employer/insurer receives credit towards this 104-week waiting period for any weeks of temporary total disability benefits that were paid prior to Act 111's enactment. [*See*] 77 P.S. § 511.3; *see* [*also*] *White v. Workers' Comp. Appeal Bd. (City of Phila.)*, 237 A.3d 1225, 1230 (Pa. Cmwlth. 2020).

*Hutchinson v. Annville Twp. (Workers' Comp. Appeal Bd.)*, 260 A.3d 360, 363 n.7 (Pa. Cmwlth. 2021), *appeal denied*, 279 A.3d 1180 (Pa. 2022).

17, 2021. On December 10, 2021, the WCJ granted the Modification Petition, changing Claimant's disability status from total to partial as of his August 6, 2020 IRE date.[5] Claimant appealed to the Board. On April 20, 2022, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[6]

Claimant first argues that the WCJ erred in determining that Act 111 can be applied to injuries that occurred before its October 24, 2018 effective date, when the Act does not contain a retroactivity clause or other specific terminology to demonstrate that the legislature intended it to apply retroactively, as required by Section 1926 of the Statutory Construction Act of 1972 (SCA)[7], and Section 15.71 of the Legislative Reference Bureau's Regulations.[8]

To the contrary, Act 111 replaced former Section 306(a.2) of the Act with Section 306(a.3) of the Act, which declares, in pertinent part:

> (1) **When an employe has received total disability compensation** . . . **for a period of** [**104**] **weeks**, **unless**

---

[5] "A modification to partial disability status does not reduce the amount of weekly wage benefits paid to a claimant, but it limits future payments to 500 weeks from the modification date." *Hutchinson*, 260 A.3d at 362 n.4; *see also Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018).

[6] "[This Court's] review is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, and whether constitutional rights were violated." *Hutchinson*, 260 A.3d at 364 n.8 (quoting *Gienic v. Workers' Comp. Appeal Bd. (Palmerton Hosp.)*, 130 A.3d 154, 159-60 n.1 (Pa. Cmwlth. 2015)).

[7] Section 1926 of the SCA specifies: "No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. § 1926.

[8] Section 15.71 of the Legislative Reference Bureau's Regulations provides:

> (a) *Use.* If a statute is to apply retroactively, it is necessary to include a provision to achieve this effect. The [SCA] (1 Pa.C.S. § 1926) provides that no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.

> (b) *Form.* A retroactive provision may be in substantially the following form:

> "This act shall take effect immediately and shall be retroactive to January 1, 1973."

101 Pa. Code § 15.71.

**otherwise agreed to**, **the employe shall be required to submit to a medical examination which shall be requested by the insurer within [60] days upon the expiration of the [104] weeks to determine the degree of impairment due to the compensable injury**, **if any**. The degree of impairment shall be determined based upon an evaluation by a physician . . . pursuant to the [6th Edition AMA Guides].

(2) **If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than [35%] impairment under the [6th Edition AMA Guides], the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits** . . . . **If such determination results in an impairment rating less than [35%] impairment under the [6th Edition AMA Guides], the employe shall then receive partial disability benefits** . . . : Provided, however, That no reduction shall be made until [60] days' notice of modification is given.

(3) Unless otherwise adjudicated or agreed to based upon a determination of earning power . . . , the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same. An insurer or employe may, at any time prior to or during the [500]-week period of partial disability, show that the employe's earning power has changed.

(4) An employe may appeal the change to partial disability at any time during the [500]-week period of partial disability[:] Provided, That there is a determination that the employe meets the threshold impairment rating that is equal to or greater than [35%] impairment under the [6th Edition AMA Guides].

(5) Total disability shall continue until it is adjudicated or agreed . . . that total disability has ceased or the employe's condition improves to an impairment rating that is less than [35%] of the degree of impairment defined under the [6th Edition AMA Guides].

(6) Upon request of the insurer, the employe shall submit to an independent medical examination in accordance with the provisions of [S]ection 314 [of the Act] to determine

5

the status of impairment: Provided, however, That for purposes of this clause, the employe shall not be required to submit to more than [2] independent medical examinations under this clause during a [12]-month period.

(7) In no event shall the total number of weeks of partial disability exceed [500] weeks for any injury or recurrence thereof, regardless of the changes in status in disability that may occur. In no event shall the total number of weeks of total disability exceed [104] weeks for any employe who does not meet a threshold impairment rating that is equal to or greater than [35%] impairment under the [6th Edition AMA Guides], for any injury or recurrence thereof.

77 P.S. § 511.3 (emphasis added).

Act 111 also added Section 3 to the Act, which provides, in relevant part:

(1) For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of 104 weeks under [S]ection 306(a.3)(1) of the [A]ct, **an insurer shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph**. This [S]ection shall not be construed to alter the requirements of [S]ection 306(a.3) of the [A]ct.

(2) For the purposes of determining the total number of weeks of partial disability compensation payable under [S]ection 306(a.3)(7) of the [A]ct, **an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph**.

Act 111, § 3(1), (2) (emphasis added).

Moreover,

[t]his Court previously considered and rejected similar [retroactivity] contentions in *Pierson v. Workers' Compensation Appeal Board (Consol Pennsylvania Coal*

6

*Co.* [*LLC*]*)*, 252 A.3d 1169 (Pa. Cmwlth.[])[, *appeal denied*, 261 A.3d 378 (Pa. 2021)]. There, . . . the claimant suggested that applying Act 111 to injuries predating its enactment would impair his vested rights. *Id*. at 1175-76. In rejecting the claimant's vested rights argument, this Court explained:

> While [the c]laimant, here, argues that he has a [vested] right to benefits as calculated at the time of injury, there are reasonable expectations under the . . . Act that benefits may change. We acknowledge that a claimant retains a certain right to benefits until such time as he is found to be ineligible for them. However, claimants, such as the one in the matter before us, did not automatically lose anything by the enactment of Act 111. Act 111 simply provided employers with the means to change a claimant's disability status from total to partial by providing the requisite medical evidence that the claimant has a whole body impairment of less than 35%, after receiving 104 weeks of [temporary total disability] benefits.

> As this Court opined in *Rose Corporation* [*v. Workers' Compensation Appeal Board (Espada)*, 238 A.3d 551 (Pa. Cmwlth. 2020)], the General Assembly made it clear in Act 111 that weeks of [temporary total disability] and partial disability paid by an employer/insurer prior to the enactment of Act 111 count as credit against an employer's new obligations under Act 111.

> . . . .

> In *Rose Corporation*, we also added: "Through the use of very careful and specific language, the General Assembly provided employers/insurers with credit for the weeks of compensation, whether total or partial in nature, previously paid." *Rose Corp*., 238 A.3d at 562.

> [A]s we made clear in *Rose Corporation*, the 104-week and credit provisions of Act 111 were explicitly given retroactive effect by the clear language used by the General Assembly.

7

> [The c]laimant, herein, argues that the General
> Assembly . . . did not explicitly express an intent
> to apply the provisions of Act 111 in any sort of a
> retroactive fashion. . . . Further, we believe it is
> clear that the General Assembly intended for the
> 104-week and credit weeks provisions of Act 111
> to be given retroactive effect, where, as we noted
> in *Rose Corporation*, it stated in plain language it
> was doing so.
>
> *Id.* at 1180 (citation omitted). Our analysis in *Pierson* is
> directly applicable and controlling here.

*Hutchinson v. Annville Twp. (Workers' Comp. Appeal Bd.)*, 260 A.3d 360, 366-67 (Pa. Cmwlth. 2021), *appeal denied*, 279 A.3d 1180 (Pa. 2022) (footnote omitted). Accordingly, Claimant's argument that the WCJ erred in determining that Act 111 can be applied to injuries that occurred before its October 24, 2018 effective date, lacks merit.

Claimant next argues that the WCJ erred in determining that Act 111 is not an unconstitutional delegation of legislative authority. Claimant specifically contends that "[m]erely replacing the phrase 'most recent edition' of the AMA Guides with [the 6th Edition AMA Guides] d[id] nothing to address the Supreme Court's admonition that 'the General Assembly may delegate regulatory power to responsible governmental agencies,' but not to private persons[.][] *Protz* [*II*], 161 A.3d at 837[.]" Claimant Br. at 8. Rather, "[l]ike its predecessor, Act 111 still constrains an evaluating physician to follow the methodology that the AMA has developed . . . ." Claimant Br. at 9.

> In *Hutchinson*,
>
> [the c]laimant [also] assert[ed] that Act 111 is
> unconstitutional because its provision for IREs pursuant to
> the [6th Edition AMA Guides] improperly delegates
> legislative authority to the AMA, a private entity. This
> Court has previously rejected this argument and has
> expressly held that Act 111 d[oes] not constitute an
> improper delegation of legislative authority. [*See Pa.*]

8

*AFL-CIO* [*v. Commonwealth*], 219 A.3d [219 (Pa. Cmwlth. 2019), *aff'd per curiam* (Pa. No. 88 MAP 2019, filed Aug. 18, 2020)]; *see also Rose Corp. . . .* (by specifying the edition of the [AMA] Guides to be applied in performing IREs, the legislature cured the unconstitutional delegation that arose from the former language providing for application of the most recent edition). [The c]laimant's assertion to the contrary is without merit. As we explained in *AFL-CIO*, although the legislature may not delegate the future enactment of standards, it may adopt as its own an existing set of standards, and doing so in Act 111 d[oes] not unconstitutionally delegate its legislative authority.[FN]9 *AFL-CIO*, 219 A.3d at 314-15 (quoting *Protz II*, 161 A.3d at 838-39, and citing *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth, . . .* 877 A.2d 383, 418 ([Pa.] 2005)).

> [FN]9 The flaw in former Section 306(a.2) [of the Act] was that, unlike the replacement provision of Act 111, it did not simply adopt a set of existing standards; rather, by mandating use of the most recent version of the [AMA] Guides, it allowed the AMA to alter the standards at will without any legislative oversight.

*Hutchinson*, 260 A.3d at 366 (italics omitted). Accordingly, Claimant's argument that the WCJ erred in determining that Act 111 is not an unconstitutional delegation of legislative authority also lacks merit.

Lastly, Claimant argues that the WCJ erred by finding that Dr. Pande's report and testimony provided a sufficient evidentiary foundation for the findings of fact necessary to grant Employer's Modification Petition. Specifically, Claimant asserts:

> Dr. Pande never established an opinion that Claimant was at maximum medical improvement for the expanded injury as defined by the [S]tipulation. Rather, he merely testified that the [S]tipulation did not alter his existing opinion, which was that Claimant had reached maximum medical improvement for a lumbar strain. Employer presented no further evidence that Claimant had achieved

9

maximum medical improvement for his expanded injury, as defined in the parties' [S]tipulation. Because there was no evidence, testimonial or otherwise, in the record that Claimant was at maximum medical improvement for the expanded injury definition, []the WCJ['s] finding to that effect lacks foundation for a prerequisite to changing an injured worker's status via an IRE and should be reversed.

Claimant Br. at 10-11.

Dr. Pande testified:

[Claimant's Counsel:] . . . [F]ollowing your review of the additional records, . . . what conditions and diagnoses are fairly attributable to Claimant's August 28, 2013 work injury? . . .

[Dr. Pande:] The answer would be consistent with newly available materials. And that included exacerbation of pre-existing L5-S1 disc herniation and L4-L5 disc herniation, as well as the sprain/strain injury.

[Claimant's Counsel:] And did you have an opportunity to utilize those additional diagnoses in conjunction with your prior history that you took from [] Claimant, that prior physical examination that you performed, and an updated whole person impairment rating based upon the [6th Edition AMA Guides]?

[Dr. Pande:] Yes.

[Claimant's Counsel:] And what was that score for the whole person impairment?

[Dr. Pande:] This was revised for an updated impairment --- whole person impairment rating of 17[%].

[Claimant's Counsel:] Okay. And just to confirm, when you had an opportunity to review those additional records and expand your opinion regarding the work[-]related diagnoses [sic]. Did that change your opinion that Claimant was at maximum medical improvement?

[Dr. Pande:] No. [Claimant] had stated . . . that he had undergone a variety of treatments, including nearly five years of therapy, multiple injections and chronic use of

10

medication, just keeping the pain at bay. He himself had stated he plateaued two years prior to the [IRE] date.

R.R. at 154a-155a.

On cross-examination, Dr. Pande further stated:

[Employer's Counsel:] How did you determine that [Claimant] had reached maximum medical improvement?

[Dr. Pande:] Well, from the [6th Edition AMA Guides], you can achieve [maximum medical improvement] with or without treatment. In [Claimant's] case, he did --- did have multiple treatments . . . however, his pain has not resolved. He's [sic] continued to have axial related pain in the back. So that tells me that while there was partial improvement of his complaints[,] he never resolved. So he was qualified for maximum medical improvement.

What sealed the deal was the fact that he said that he stopped improving about two years prior to the [IRE] . . . . At that point, he was [sic] basically leveled off and he continued to take medications. Now [] that states to me that he is at maximal medical improvement.

R.R. at 160a-161a. Employer did not present any contrary testimony.

The law is well established:

The WCJ is the fact[-]finder, and it is solely for the WCJ . . . to assess credibility and to resolve conflicts in the evidence. Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. In addition, it is solely for the WCJ, as the fact[-]finder, to determine what weight to give to any evidence. . . . As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted.

*W. Penn Allegheny Health Sys. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (quoting *Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs.)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted)).

Here, based on Dr. Pande's testimony, the WCJ stated in Finding of Fact (FOF) 6.i: "Dr. Pande concluded that Claimant remains at maximum medical improvement with regard to these additional diagnoses. However, taking into account these additional diagnoses, Dr. Pande opined that Claimant's whole person impairment rating now would be 17%." WCJ Dec. at 4 (R.R. at 18a). In FOF 7, the WCJ further found:

> After consideration of the record as a whole, this [WCJ] finds that the testimony of Dr. Pande that Claimant is at [m]aximum [m]edical [i]mprovement and has a whole person impairment rating of 17% is credible, competent and persuasive. In support of this determination, this [WCJ] has considered both his direct and cross-examination [testimony] and notes the following: (a) [h]is testimony is based upon the [6th Edition AMA Guides]; (b) Dr. Pande is a well-qualified physiatrist and has an active clinical practice of at least twenty hours per week; (c) his conclusions were based upon Claimant's reported history, medical records, diagnostic imaging studies, and a thorough physical examination; (d) his answers evidenced in depth knowledge of the AMA Guides; (e) he answered all questions posed to h[im] unequivocally; and (f) his testimony was uncontroverted by any other medical opinion.

*Id*. Dr. Pande's testimony clearly provided the substantial evidence necessary to support the WCJ's findings and the WCJ's resultant conclusion to grant the Modification Petition.

Based on the foregoing, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Julius J. Cobbs, III,             :
            Petitioner      :
                          :
          v.                 :
                          :
City of Philadelphia (Workers'    :
Compensation Appeal Board),     :    No. 476 C.D. 2022
            Respondent    :

## O R D E R

AND NOW, this 9th day of January, 2023, the Workers' Compensation Appeal Board's April 20, 2022 order is affirmed.

_____

ANNE E. COVEY, Judge