# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Justin L. Hawbaker,                                    :
                          Petitioner                   :
                                                       :
            v.                                          :    No. 224 C.D. 2016
                                                       :    Submitted: July 22, 2016
Workers' Compensation Appeal                           :
Board (Kriner's Quality Roofing                        :
Services and Uninsured Employer                        :
Guaranty Fund),                                        :
                          Respondents                  :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                              FILED: February 13, 2017

        Justin L. Hawbaker (Claimant) petitions for review of an adjudication
of the Workers' Compensation Appeal Board (Board) denying his claim petitions.
In doing so, the Board affirmed the decision of the Workers' Compensation Judge
(WCJ) that Claimant was an independent contractor and not an employee of Shawn
Kriner d/b/a Kriner's Quality Roofing Services (Kriner), as Claimant contended.
On appeal, Claimant contends that the Board erred. He contends that in spite of his
written contract with Kriner that identified Claimant as an independent contractor
and required him to carry liability insurance in the amount of $50,000, he was
actually an employee of Kriner. Accordingly, Claimant asserts that he is entitled to
workers' compensation for the injuries he sustained when he fell from a roof.
Discerning no merit to these arguments, we affirm the Board.

**Background**

On November 19, 2013, Claimant was injured when he fell off a roof. On December 16, 2013, Claimant filed a claim petition under the Workers' Compensation Act (Act)[1] seeking compensation for fractures to his leg and vertebrae. Thereafter, on January 7, 2014, Claimant filed another claim petition naming Kriner and the Uninsured Employers Guaranty Fund as defendants.[2]

Before the WCJ, Claimant testified about his work for Kriner, a company that specializes in residential roofing jobs. Claimant testified that his work took "some kind of skill." Notes of Testimony (N.T.), 3/26/2014, at 13; Reproduced Record at 24a (R.R. __). Claimant explained that Shawn Kriner told him "where to start the job, what needed to be done on the job, when [he] was allowed to take lunch, [and] when [he] was allowed to leave." *Id.* at 14; R.R. 25a. Claimant either drove himself to the job site or rode with Kriner. At these jobs Claimant used his personal tools, such as a tear-off shovel to remove shingles, hammer and a nail gun. He also used ladders and nails provided by Kriner.

When Claimant started working for Kriner in 2011, he was compensated on an hourly basis. In January 2012, he signed a contract entitled "Independent Contractor Agreement." In December 2012, Claimant acknowledged that he "stopped showing up, stopped calling." *Id.* at 46; R.R. 57a. Claimant attributed his absences to his substance abuse problems.

In March 2013, Claimant contacted Kriner about returning to work. Kriner required Claimant to obtain liability insurance and provide proof of that insurance before he could start working on any Kriner jobs. An addendum to the

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

[2] Claimant filed a duplicate claim petition on January 13, 2014.

2012 contract provided for Claimant to be paid by assigned task. Claimant explained that he was paid $15.00 to $25.00 a square (10' x 10' area) when removing a roof and $5.00 a bundle, or $15.00 a square, to install a roof. Each week Kriner advised Claimant where the roofing assignments would take place. Claimant did roofing jobs only for Kriner.

On November 19, 2013, Claimant was standing on the roof of a bay window when he reached for a caulking gun and fell. Claimant landed on his feet with the left side of his body taking the brunt of the fall, causing injuries to his knee and leg. Claimant was taken to Hershey Medical Center, where he was diagnosed with a left lateral tibial plateau fracture. On November 20, 2013, he underwent open reduction and internal fixation of his fracture. Subsequently, Claimant has developed pain across his lower back.

On cross-examination, Claimant acknowledged that the January 2012 contract was not terminated in writing. He also acknowledged that his application for liability insurance identified his business name as "Justin L. Hawbaker, I" and provided a business address. Finally, Claimant acknowledged that he did not notify Kriner when his liability insurance lapsed.

Kriner testified about the January 2012 contract for Claimant's roofing and general labor services. The contract had an indefinite duration, subject to termination by either party with 30 days written notice. It provided compensation at $17.50 per hour. In 2013, the compensation terms changed, as Kriner explained:

> Hourly rate for any repairs or simple labor was at $15.00 an hour. If doing tear off, if chosen to do any tear off, it's $15.00 per square, which is a ten foot by ten foot section. $5.00 per roofing square for ground cleanup. $5.00 per roofing square to

3

> water tighten that's to lay the underlayment and the felt moisture guard.
>
> $5.00 per bundle of shingles if you're laying shingles. And $10.00 per bundle of cap shingles, which goes at the peak of the roof.

N.T., 5/22/2014, at 35; R.R. 112a. Kriner explained that the contract does not preclude the independent contractor from working for other contractors or on his own; further, the contract requires the independent contractor to secure general liability insurance. At the end of the year, Kriner issues a Form 1099 to each subcontractor.

Kriner explained that at the job site, he and the subcontractors discuss the work to be done and divide it up by discrete task. The subcontractors are roofers who know how to do these tasks. The manufacturer's package of shingles provides the specific instructions on their installation. Kriner inspects the quality of work of the subcontractors. If he discovers a problem with the work, the subcontractor must correct the problem without additional compensation.

On cross-examination, Kriner explained that in December 2012, he spoke to Claimant about his lack of reliability. Claimant stopped showing up at job sites without explanation. When Claimant did appear, he behaved erratically. Kriner stopped calling Claimant. After several months, Claimant contacted Kriner and stated that he had gotten the help that he needed. Kriner did not allow Claimant to return to roofing job sites until he provided proof of liability insurance. Claimant provided his own tools, but he was also allowed to use Kriner's tools and equipment.

4

**WCJ Decision**

The WCJ found that Claimant did not establish an employer/employee relationship as of the date of his injury. Rather, the "evidence demonstrate[d] the Claimant was customarily engaged as an independent roofing contractor." WCJ Decision, 1/22/2015, at 5. In support, the WCJ made several critical findings of fact:

> 7. [] Claimant agreed the roofing work requires skill. He further testified a lot of it is labor intensive involving tearing off shingles and replacing wood. []
>
> 8. [] Claimant testified he brought his own tear off shovel to the job as well as an air hose and nail gun. He used [] Kriner's air compressor and ladder on [Kriner's] jobs. [] In later testimony [] Claimant testified he owned his own hammer, tape measure, metal snips, shingle shears, utility knife, chalk boxes, caulking gun, speed square, hand saw, shingle extraction shovel, seam roller, roofing coil nail guns, and air hoses. []
>
> 9. … On his personal Facebook page [] Claimant lists his work as independent roofing contractor. [] Claimant testified that in 2011 or 2012 he had to sign a contract to work for [Kriner]. The Independent Contractor Agreement is dated January 16, 2012. [] Claimant also was required by an Amendment to the Independent Contractor's Agreement to obtain general liability insurance. []
>
> 10. [] Claimant's insurance policy lists [] Claimant's business name as Justin L. Hawbaker, I. []

*Id.* at 3-4. The WCJ explained that Claimant was customarily engaged as an independent roofing contractor because he possessed the tools and a vehicle suitable for performing the work; he could be required to repair his work without additional remuneration; and he was required to maintain an insurance policy for

5

general liability insurance in excess of $50,000. *Id.* at 5. Further, Claimant testified that he did the same or similar business with C&J and Dean's Contracting. *Id.*

The WCJ credited Kriner's testimony in its entirety. The WCJ credited Claimant's testimony about his work with Kriner, but he did not credit Claimant's stated belief that he was an employee, as such belief was against "the weight of the evidence." *Id.* The WCJ denied Claimant's claim petitions against Kriner and the Uninsured Employer Guaranty Fund.

### Board Adjudication

Claimant appealed to the Board, arguing that the WCJ erred in finding that he was an independent contractor. The Board affirmed the decision of the WCJ, concluding that Claimant did not establish that he was an employee of Kriner when he had his accident on November 19, 2013. The Board explained that a "claimant bears the burden of establishing an employer/employee relationship in order to receive benefits," and "[a]n independent contractor is not entitled to benefits...." Board Adjudication, 1/28/2016, at 3.

The Board observed that, in October 2010, the legislature passed the Construction Workplace Misclassification Act,[3] "which set forth guidelines for classification of independent contractors in construction." *Id.* Section 3 of the Misclassification Act,[4] 43 P.S. §933.3, sets forth the criteria for determining whether an individual is an independent contractor, which, the Board noted, "track many of the traditional workers' compensation considerations for determining direction and control." *Id.* The Board concluded, based upon its review of the

---

[3] Act of October 13, 2010, P.L. 506, 43 P.S. §§933.1-933.17.

[4] Section 3 of the Misclassification Act is quoted in full later in this opinion.

6

record, that the WCJ correctly applied the terms of the Misclassification Act in concluding that Claimant was an independent contractor and not an employee.

The Board rejected Claimant's argument that because Kriner's answer was not timely, the WCJ was required to hold that Claimant was Kriner's employer. The Board explained that whether an individual is an employee or independent contractor is a purely legal question. The effect of Kriner's untimely answer was to admit facts, not legal positions.

On appeal,[5] Claimant raises two issues. First, he contends that given the record evidence, the Board erred and abused its discretion in holding that Claimant was not an employee of Kriner. Second, he contends that the Board erred and abused its discretion because Kriner's untimely answer to the claim petition established that Claimant was an employee of Kriner.[6]

**Analysis**

This Court has held that "[a] claimant seeking workers' compensation benefits must establish that he sustained an injury in the course of his employment and that the injury resulted in a loss of earning power." *Staron v. Workers' Compensation Appeal Board (Farrier)*, 121 A.3d 564, 567 (Pa. Cmwlth. 2015), *appeal denied*, 132 A.3d 460 (Pa. 2016) (*citing Cruz v. Workers' Compensation Appeal Board (Kennett Square Specialties)*, 99 A.3d 397, 407 (Pa. 2014)). "Employment status is a critical threshold determination for liability." *Id.* (*quoting American Road Lines v. Workers' Compensation Appeal Board (Royal)*, 39 A.3d

---

[5] We review Board decisions to determine whether errors of law were made, constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)*, 966 A.2d 1159, 1162 n.4 (Pa. Cmwlth.), *appeal denied*, 982 A.2d 1229 (Pa. 2009).

[6] The Uninsured Employer Guaranty Fund did not file a brief in this appeal.

603, 610 (Pa. Cmwlth. 2012)). Independent contractors are not eligible for workers' compensation. *Guthrie v. Workers' Compensation Appeal Board (The Travelers' Club, Incorporated)*, 854 A.2d 653, 661 (Pa. Cmwlth. 2004). The nature of a working relationship "is a question of law based on the facts presented in each case." *American Road Lines*, 39 A.3d at 610. It is the claimant's burden to prove the existence of an employer-employee relationship. *Universal Am-Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 762 A.2d 328, 330 (Pa. 2000).

Claimant argues that the record evidence did not establish that he was an independent contractor. First, the parties did not execute a written contract when Claimant returned to work with Kriner in March 2013. Second, Kriner had complete control and direction over Claimant's job performance. Third, Claimant was not engaged in an independently established trade. Kriner disagrees with Claimant's characterization of the evidence and contends that their arrangement satisfied all the criteria in the Misclassification Act for classifying an individual as an independent contractor.

The Misclassification Act sets forth the criteria for determining whether a construction worker is an independent contractor or an employee for purposes of workers' compensation and unemployment compensation. Section 3(a) states that, "[f]or purposes of workers' compensation … an individual who performs services in the construction industry for remuneration" will be an independent contractor if:

> (1) The individual has a written contract to perform such services.

8

(2) The individual is free from control or direction over performance of such services both under the contract of service and in fact.

(3) As to such services, the individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. §933.3(a). Section 3(b) sets forth the criteria of "an independently established trade, occupation, profession or business." It states:

(b) Criteria.—An individual is customarily engaged in an independently established trade, occupation, profession or business with respect to services the individual performs in the commercial or residential building construction industry only if:

(1) The individual possesses the essential tools, equipment and other assets necessary to perform the services independent of the person for whom the services are performed.

(2) The individual's arrangement with the person for whom the services are performed is such that the individual shall realize a profit or suffer a loss as a result of performing the services.

(3) The individual performs the services through a business in which the individual has a proprietary interest.

(4) The individual maintains a business location that is separate from the location of the person for whom the services are being performed.

(5) The individual:

(i) previously performed the same or similar services for another person in accordance with paragraphs (1), (2),

9

(3) and (4) while free from direction or control over performance of the services, both under the contract of service and in fact; or

(ii) holds himself out to other persons as available and able, and in fact is available and able, to perform the same or similar services in accordance with paragraphs (1), (2), (3) and (4) while free from direction or control over performance of the services.

(6) The individual maintains liability insurance during the term of this contract of at least $50,000.

43 P.S. §933.3(b).[7]

---

[7] As the Board observed, the Misclassification Act has codified the relevant case law on determining whether an individual is an employee or an independent contractor. These factors include:

(1) control of manner the work is done;
(2) responsibility for result only;
(3) terms of agreement between the parties;
(4) nature of the work/occupation;
(5) skill required for performance;
(6) whether one is engaged in a distinct occupation or business;
(7) which party supplies the tools/equipment;
(8) whether payment is by time or by the job;
(9) whether work is part of the regular business of employer; and,
(10) the right to terminate employment.

*American Road Lines*, 39 A.3d at 611 (citing *Baum v. Workers' Compensation Appeal Board (Hitchcock),* 721 A.2d 402 (Pa. Cmwlth. 1998) (citing *Hammermill Paper v. Rust Engineering Company,* 243 A.2d 389 (Pa. 1968); the relevant criteria are control of the manner of the work to be done, responsibility for the result, terms of agreement and nature of the occupation or business)).

Claimant first contends that he did not have a written contract with Kriner because none was executed when he resumed work with Kriner in March 2013. Kriner responds that his January 2012 contract with Claimant never terminated.

On January 16, 2012, the parties executed a written agreement, titled "Independent Contractor Agreement" (Agreement), that stated, in relevant part, as follows:

> THIS AGREEMENT, made and entered into this 16th day of January, 2012, by and between Shawn P. Kriner Kriner's Quality Roofing Services, hereinafter called the Company, … and Justin L. Hawbaker, hereinafter called the Contractor….

> **WITNESSETH**, the Company desires to retain the services of the Contractor, and the Contractor desires to provide services to the Company, under the terms and specifications provided below:

> 1. **Type of Services.** The Company heretofore retains the Contractor to perform the following service(s):

> Technician all roofing aspects. Kriner's Quality Roofing Services shall not pay for mistakes made by hired Contractors. Contractors will fix mistakes at own expense and recover materials or property if necessary.

> 2. **Duration of Services.** The Contractor shall provide the above documented services to the company:

> * * *

> ☑ until either party serves 30 days written notice to the other party

> 3. **Payment/Remuneration.** The Company shall remunerate the Contractor: See Amendment

11

* * *

7. **Independent Contractor Status.** It is herewith acknowledged the Contractor is independent in nature, and as such retains all rights to control and determination of the manner in which the contractual services are performed.

* * *

9. **Equipment and Supplies.** The Contractor shall be fully responsible for the procurement, cost and use of all materials, supplies, equipment and/or additional labor that might be needed or required to complete the requirements of this Agreement.

* * *

17. **Termination.** The Company may terminate this agreement at any time by 10 working days' written notice to the Contractor. In addition, if the Contractor is convicted of any crime or offense, fails or refuses to comply with the written policies or reasonable directive of the Company, is guilty of serious misconduct in connection with performance hereunder, or materially breaches provisions of this agreement, the Company at any time may terminate the engagement of the Contractor immediately and without prior written notice to the Contractor.

Certified Record (C.R.), Exhibit UEGF – 1 (emphasis in original). The Amendment to the Agreement states as follows:

**Pay Procedures:**

- Pay upon completion or up to four business days (excludes weekend and holidays) after receiving final check from contracted home owner.

12

- Payment instructions will be provided for each contract.

C.R., Exhibit C-8 (emphasis in original).

The January 2012 contract between Claimant and Kriner did not terminate in accordance with either Paragraph 2 or Paragraph 17 of the agreement. The Misclassification Act does not require the subcontractor and general contractor to execute a separate contract for each job, and we reject this assertion by Claimant. Claimant contends that, in any case, the January 2012 contract ceased to have effect after December 2012 because he was fired. When he returned in March 2013, he did not sign a new contract.

The WCJ is the fact finder, and "[i]t is solely for the WCJ … to assess credibility and to resolve conflicts in the evidence." *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003). Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Compensation Appeal Board (LNP Engineering),* 771 A.2d 1246, 1251 (Pa. 2001). In addition, "it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence … the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted." *Waldameer Park*, 819 A.2d at 168 (citation omitted).

Here, the WCJ found the testimony of Kriner credible and consistent with the terms of the January 2012 contract. Kriner did not "fire" Claimant because he did not give him a 10-day advance written notice of termination, as set forth in Paragraph 17. Kriner simply stopped assigning jobs to Claimant. The WCJ resolved the conflict in the testimony of Kriner and Claimant in favor of Kriner, and we will not reweigh the evidence.

13

In its *amicus curiae* brief, the Department of Labor and Industry, Bureau of Labor Law Compliance (Bureau) argues that the Board erred because the written contract of the parties had an indefinite duration, which it contends is contrary to the purpose of the Misclassification Act. In support, the Bureau cites *Flaharty v. Trout,* 138 A. 863 (Pa. 1927), where the Supreme Court stated that the indefinite duration of the parties' oral contract was "a strong circumstance against the theory of an independent contractor."[8] *Id.* at 864. We are not persuaded.

First, the duration of the contract was only one of several factors considered by the Supreme Court in *Flaharty*, and it was decided 90 years before the enactment of the Misclassification Act. Second, the Misclassification Act does not require a contract of specified duration; it requires only a written contract. This Court will not "supply words … as a means of interpreting a statute." *Rogele, Inc. v. Workers' Compensation Appeal Board (Mattson)*, 969 A.2d 634, 637 (Pa. Cmwlth. 2009).

Alternatively, the Bureau argues that it is "virtually impossible" for contracts of indefinite duration to have a defined scope of work, as required by Section 3(b)(2), 43 P.S. §933.3(b)(2), or to maintain liability insurance during the term of the contract, as required by Section 3(b)(6), 43 P.S. §933.3(b)(6). We disagree. There was a defined scope of work in the January 2012 contract, *i.e.*,

---

[8] In *Flaharty*, the decedent was killed while working at the defendant's millyard, and his widow brought an action under the Workmen's Compensation Act. The only question on appeal was "whether there was any evidence in support of the referee's finding that the relation of employer and employee … existed between the defendant and the deceased." *Flaharty*, 138 A. at 864. The defendant made an oral contract with the decedent to draw logs from the woods to the mill, at $3 a thousand feet, log measure. The Supreme Court considered a number of factors to reach its conclusion that the decedent was an employee. The duration of the decedent's oral contract with the defendant was only one factor.

roofing and general labor. Claimant chose the job assignment on a particular project. The absence of a fixed contract period is irrelevant to maintenance of liability insurance policy, *i.e.*, a totally separate contract. We reject this argument of the Bureau.

Claimant argues that the WCJ erred in finding that he was free from control or direction over his performance. He contends that Kriner directed the time and place of the job; required his attendance; set his compensation; and reviewed his work. Kriner responds that Claimant was permitted to choose which job he wanted to perform; was able to decline work; and could leave in the middle of a job. Kriner Brief at 8-9. Further, Kriner merely inspected Claimant's work product to ensure it met industry standards.

In concluding that Claimant was free from the direction or control of Kriner, except for the "appropriate direction and control between a general contractor and a subcontractor," the WCJ relied, in part, upon the following facts:

> 16. [] Kriner testified [] Claimant was free to seek employment with another contractor or undertake projects on his own....
>
> 17. [] Kriner testified that the standards for the work are on the package of materials. The standards have to be met in order to obtain warranties from the shingle manufacturers.
>
> * * *
>
> 22. … [] Kriner freely admitted that as a working general contractor on the job he oversaw the performance of his subcontractors and held them accountable to his standards....

WCJ Decision, 1/22/2015, at 4-5. Nos. 16, 17, 22. Control exists where the putative employer "possesses the right to select the employee; the right and power to discharge the employee; *the power to direct the manner of performance*; and,

15

the power to control the employee." *American Road Lines*, 39 A.3d at 611 (emphasis added).

Here, Kriner testified, "I'm expecting him to be there to do work. So is the contractor; so is the homeowner." N.T., 8/20/2014, at 10; R.R. 184a. Kriner testified that his expectations for the subcontractors were as follows:

> [W]e would discuss what is to be done or what it is that they would like to do. And then from there, they would go out to their own section and do their own work. And it's pretty much understood that they knew how work is to be done as far as the job completion and how it's to be done. It's pretty standard. It's on the package of shingles on how the roof is to be laid in order to obtain warranties from the companies and things of that nature.

N.T., 5/22/2014, at 43; R.R. 120a. Kriner did not direct the manner in which Claimant did the work. This is a critical feature of the master-servant relationship. *Minteer,* 762 A.2d at 333; 43 P.S. §933.3(a)(2) (independent contractor is "free from control or direction over performance."). Expecting an independent contractor to meet quality standards as a condition of being compensated is the mark of prudence by any person who engages a contractor to do construction work.

Finally, Claimant contends that the Board erred in affirming the WCJ's determination that he was engaged in an independently established trade. Claimant argues that he did not have his own roofing business and was not paid by the homeowner.

Claimant's arguments lack support in the record. That Kriner allowed Claimant to use his tools does not negate the fact that Claimant brought necessary tools to the job. Claimant also had to fix any mistakes in his work at his own expense pursuant to the January 2012 contract, which stated that "Kriner's Quality

16

Roofing Services shall not pay for mistakes made by hired Contractors. Contractors will fix mistakes at own expense and recover materials or property if necessary." Agreement, ¶1; C.R., Exhibit UEGF-1. Claimant acknowledged that he had to fix his mistakes. The record also showed that Claimant performed the same or similar services for two other roofing companies; Claimant's Facebook page stated that he was an independent roofing contractor; and Claimant's insurance application identified his business as "Justin L. Hawbaker I" and himself as "owner." Claimant identified his business address as Meadow Drive in Shippensburg. On this evidence, the Board did not abuse its discretion or err in affirming the decision of the WCJ that Claimant did not establish the existence of an employer/employee relationship.

In his second issue, Claimant contends that the Board erred in giving limited effect to the fact that Kriner's answer was untimely filed. It is well-settled that "[w]here an employer files a late answer without adequate excuse, every factual allegation asserted in the claimant's claim petition is admitted as true, and the employer is barred from presenting any affirmative defenses or challenges to any of the factual allegations in the claim petition." *Rite Aid Corporation v. Workers' Compensation Appeal Board (Bennett)*, 709 A.2d 447, 449 (Pa. Cmwlth. 1998) (citations omitted); *see also* 77 P.S. §821.[9] A claimant does not have to

---

[9] Section 416 of the Act, 77 P.S. §821 states:

> Within twenty days after a copy of any claim petition or other petition has been served upon an adverse party, he may file with the department or its workers' compensation judge an answer in the form prescribed by the department.

> Every fact alleged in a claim petition not specifically denied by an answer so filed by an adverse party shall be deemed to be admitted by him. But the failure of any party or of all of them to deny a fact alleged in any other petition shall not preclude the workers' compensation judge before whom the petition is heard from

**(Footnote continued on the next page . . .)**

corroborate allegations in a claim petition that are admitted by reason of a late answer. *Heraeus Electro Nite Company v. Workmen's Compensation Appeal Board (Ulrich)*, 697 A.2d 603, 608 (Pa. Cmwlth. 1997). Here, Kriner's answer was untimely filed; therefore, Kriner admitted all factual allegations in Claimant's claim petition as true.

However, failure to file a timely answer is not the equivalent of a default judgment. *Heraeu,* 697 A.2d at 608. A claimant still has the burden of proving all elements to support an award of compensation. *Id.* Further, conclusions of law are not deemed admitted by a late answer to the claim petition. *Neidlinger v. Workers' Compensation Appeal Board (Quaker Alloy/CMI International)*, 798 A.2d 334, 338 (Pa. Cmwlth. 2002). It is well settled that "[t]he existence of an employer-employee relationship is a question of law based on the facts presented in each case." *American Road Lines*, 39 A.3d at 610 (citation omitted). Although Claimant filed a claim petition identifying Kriner as his employer, Kriner's failure to file a timely answer to the petition does not constitute an admission on this point. It is a question of law that is to be decided by a tribunal. Accordingly, the Board did not err in affirming the WCJ's determination that Kriner's late answer did not obviate Claimant's burden of establishing an employer/employee relationship.

---

**(continued . . .)**

requiring, of his own motion, proof of such fact. If a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the workers' compensation judge hearing the petition shall decide the matter on the basis of the petition and evidence presented.

77 P.S. §821.

**Conclusion**

For the above-stated reasons, we affirm the order of the Board.

_____

MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Justin L. Hawbaker,                          :
                    Petitioner               :
                                             :
            v.                               :        No. 224 C.D. 2016
                                             :
Workers' Compensation Appeal                 :
Board (Kriner's Quality Roofing              :
Services and Uninsured Employer              :
Guaranty Fund),                              :
                    Respondents              :

# **O R D E R**

AND NOW, this 13th day of February, 2017, the order of the Workers' Compensation Appeal Board dated January 28, 2016, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge