Steven Conrad,                                      :
               Petitioner                      :
                              :  No.  557 C.D. 2022
         v.                                        :
                              :  Submitted: March 31, 2023
Department of Transportation            :
(Workers' Compensation                  :
Appeal Board),                          :
               Respondent                     :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE McCULLOUGH                   FILED: February 26, 2024

In this workers' compensation case, Steven Conrad (Claimant) petitions for review of the May 12, 2022 opinion and order of the Workers' Compensation Appeal Board (Board), which affirmed the October 8, 2021 decision and order of the Workers' Compensation Judge (WCJ). Therein, the WCJ (1) granted the Department of Transportation's (Employer) Modification Petition, (2) modified Claimant's disability status for his July 5, 2005 work injury to temporary partial disability effective August 11, 2020, (3) found that Employer is entitled to a credit for the weeks of temporary partial disability benefits paid from September 20, 2011, through November 1, 2016, and (4) ordered Employer to deduct 20% from the wage loss benefits payable to Claimant and pay the same directly to Claimant's Counsel in satisfaction of the approved attorney fee agreement. Upon review we affirm.

## I. Facts and Procedural History

On July 27, 2005, Employer issued a Notice of Compensation Payable (NCP) accepting liability for a July 5, 2005 work-related injury sustained by Claimant

in the nature of a lower back strain; thereafter, Claimant began receiving temporary total disability benefits. (WCJ Findings of Fact (FOF) 1.) On September 20, 2011, Claimant underwent an impairment rating evaluation (IRE) provided for in Section 306(a.2) of the Pennsylvania Workers' Compensation Act (WC Act),[1] which resulted in an impairment rating of less than 50%. (FOF 2; Reproduced Record (R.R.) at 41a-46a.) Based on the results of the IRE, the WCJ modified Claimant's disability status from total to partial effective September 20, 2011, for a period of 500 weeks. *Id*; R.R. at 30a-34a.

On November 1, 2016, before 500 weeks of payment of partial disability benefits expired, Claimant filed a Reinstatement Petition alleging that his impairment rating was invalid and unconstitutional, based on *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017), and its progeny declaring the IRE section of the WC Act[2] unconstitutional. (Board Op. at 1.); R.R. at 22a-29a.

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710. Former Section 306(a.2), formerly 77 P.S. § 511.2, was added by the Act of June 24, 1996, P.L. 350 and was repealed by the Act of October 24, 2018, P.L. 714, No. 111 (Act 111), 77 P.S. § 511.3.

[2] In *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406 (Pa. Cmwlth. 2015) (*Protz I*), *affirmed in part and reversed in part*, 161 A.3d 827 (Pa. 2017) (*Protz II*), this Court declared former Section 306(a.2), *formerly* 77 P.S. § 511.2, to be an unconstitutional delegation of legislative authority to the extent that it proactively approved versions of the American Medical Association Guides to the Evaluation of Permanent Impairment (AMA Guides) "beyond the Fourth Edition without review." *Id.* at 416. In *Protz II*, the Pennsylvania Supreme Court held that the General Assembly, in authorizing the application of future versions of the AMA Guides without review, had unconstitutionally delegated its lawmaking authority in violation of the non-delegation doctrine. 161 A.3d at 840-41. The *Protz II* Court invalidated Section 306(a.2) in its entirety. *Id.* at 841.

Thereafter, Section 306(a.2) was repealed by Act 111 and replaced by Section 306(a.3), 77 P.S. § 511.3. Former Section 306(a.2) provided, in pertinent part, as follows:
**(Footnote continued on next page…)**

2

On January 31, 2018, a WCJ reinstated Claimant's total disability benefits as of September 20, 2011. (R.R. at 22a-29a.). On April 26, 2019, the Board affirmed the reinstatement to total disability status but amended the effective date to November 1, 2016, the date Claimant filed his Reinstatement Petition. (R.R. at 35a-40a.)

On August 11, 2020, Claimant underwent a new IRE pursuant to Act 111, which resulted in an impairment rating of 11%. (R.R. at 49a-58a.) Consequently, on September 10, 2020, Employer filed the instant Modification Petition seeking (1) to change Claimant's benefit status back to partial disability based on the new IRE, and (2) a credit for the partial disability benefits previously paid. (FOF 4.)

---

> (1) When an employe has received total disability compensation pursuant to clause (a) for a period of [104] weeks . . . the employe shall be required to submit to a medical examination . . . to determine the degree of impairment due to the compensable injury, if any . . . . The degree of impairment shall be determined based upon an evaluation by a physician . . . pursuant to the most recent edition of the [AMA Guides] . . . .
>
> (2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than [50%] . . . the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits. . . . If such determination results in an impairment rating less than [50%] impairment . . . the employe shall then receive partial disability benefits under class (b) . . . .

*Former* 77 P.S. § 511.2(1), (2).

Section 306(a.3) provided, in pertinent part, as follows:

> (1) When an employe has received total disability compensation pursuant to clause (a) for a period of [104] weeks . . . the employe shall be required to submit to a medical examination . . . to determine the degree of impairment due to the compensable injury, if any . . . . The degree of impairment shall be determined based upon an evaluation by a physician . . . **pursuant to the [AMA Guides], [Sixth] edition (second printing April 2009)**.
>
> (2) If such determination results in an **impairment rating that meets less than [35%] under the [AMA Guides], [Sixth] edition (second printing April 2009)**, the employe shall then receive partial disability benefits under class (b) . . . .

77 P.S. § 511.3(1), (2) (emphasis added).

On November 24, 2020, before the WCJ, Claimant presented his sworn testimony. (FOF 7; R.R at 6a-21a.) The WCJ summarized his testimony in pertinent part as follows:

> At the time of the hearing, Claimant was 68 years old. He injured his lower back while working for Employer on July 5, 2005. Since the injury, Claimant had two back surgeries performed by Dr. [Balint] Balog. Claimant had ongoing problems with his lower back. He was treating for those problems with Dr. [Jean] Santo [who] was prescribing a narcotic. Claimant had a cane he used when walking because he would lose the feeling in his legs and fall. He had been using the cane for five to eight years. He felt his symptoms were worse since he came under Dr. Santo's care. He had stabbing pain in his back with each step. His legs and back were weaker. Dr. Santo suggested Claimant use a walker during an October 2, 2020 appointment. Dr. Santo mentioned a possible fusion surgery "down the road, but to put it off as long as" possible. Dr. Santo mentioned the possible fusion surgery "years ago," perhaps in 2010. Claimant was only treating with Dr. Santo. He had not had any recent surgical consultations. In the five years prior to the hearing, Claimant's treatment had been the same, although his medication changed.
>
> Claimant had extreme, constant, toothache-like pain in his lower back all day long. His legs worsened as the day went on. In the evenings, his mobility was bad and his legs were shaky. He had pain down his legs all the way to his toes, as well as numbness and tingling. Claimant did not believe there was any kind of work he could perform. He had not worked since 2005.
>
> Claimant took his narcotic before the IRE with Dr. [John] Kline. Dr. Kline performed an examination and asked questions. The entire appointment lasted 15 minutes. The physical examination lasted five minutes.

(FOF 7.) The WCJ found Claimant's testimony to be credible "regarding the work injury he sustained and the treatment he pursued thereafter." *Id.* 9(a). However, the WCJ noted that Claimant is not qualified to render a medical opinion. *Id.*

4

Employer submitted (1) the Impairment Rating Determination Face Sheet and Report relative to the September 20, 2011 IRE performed by Jill D'Amico, D.O. (Dr. D'Amico), which found Claimant had a whole-person impairment rating of 15% as a result of his work-related injury based upon Chapter 17 of the Sixth Edition of the AMA Guides, (2) the May 2, 2012 Notice of Change of Workers' Compensation Disability Status that was completed subsequent to Dr. D'Amico's September 20, 2011 IRE, and (3) the January 25, 2012 deposition testimony of Dr. D'Amico, wherein she confirmed her opinion that Claimant was at maximum medical improvement and had a whole-person impairment rating of 15% as a result of his work-related injury. *Id.* 6.

Employer also presented the December 22, 2020 deposition testimony of John A. Kline, M.D. (Dr. Kline), who performed the August 11, 2020 IRE utilizing the Sixth Edition of the AMA Guides and the Act 111 regulations. (FOF 8; R.R. at 71a-172a.) The WCJ summarized Dr. Kline's testimony in pertinent part as follows:

> Dr. Kline obtained a history of injury and subsequent treatment from Claimant. Dr. Kline also reviewed medical records pertaining to Claimant's treatment for his work injury. Those records included diagnostic studies of Claimant's lumbar spine, as well as Dr. D'Amico's prior IRE.
>
> Dr. Kline physically examined Claimant on August 11, 2020. Claimant was morbidly obese, but he was able to move about the room without a cane. There were no abnormalities to structure or posture. There was no evidence of atrophy of the lower limbs. Claimant walked normally. He could stand on his tiptoes and his heels. Based upon Claimant's body habitus, Dr. Kline did not have Claimant walk on his tiptoes or heels, nor did Dr. Kline have Claimant tandem walk. Claimant had full range of motion of his low back but reported pain. There was some limitation to internal rotation and external rotation of both hips. There was tenderness to palpation over the area of the post-operative scar in the L4-5, L5-S1 region of the lower back. There was no tenderness in the sacroiliac joints, buttocks area, hip area, or coccyx.

5

There were no spasms or trigger points. Neurological testing of muscles in the lower limbs was normal. Claimant had 5 out of 5 strength. Reflex of the left patella was sluggish compared to the right, but otherwise reflexes were equal. There was diminished sensation on the outer portion of the right calf and foot, but sensation was otherwise normal. Straight leg raise testing was positive on the right and negative on the left in a seated position. In a supine position, straight leg raise testing was negative bilaterally. Claimant reported pain with Patrick's or Berber's test. Pelvic distraction and compression tests of the SI joint were negative. Four out of five Waddell's tests were positive, which indicated a non-anatomic reason for some of the pain or implied symptom magnification.

Based upon his history, records review, and physical examination, Dr. Kline diagnosed the July 5, 2005 work injury as a recurrent L4-5 disc herniation for which Claimant had operative decompression, as well as radicular symptoms. Arachnoiditis was a complication of Claimant's work injury. It caused radicular findings and symptoms, and it was included in the diagnoses and symptoms Dr. Kline used to perform his impairment rating evaluation. Dr. Kline opined Claimant had clearly reached maximum medical improvement [(MMI)] from his July 5, 2005 work injury. Dr. Kline noted it was 15 years after the work injury. Claimant's condition was not likely to change for better or worse throughout the course of the year, with or without additional medical treatment. Dr. Kline utilized his diagnosis of Claimant's work injury in determining the degree of whole-body impairment, given Claimant's recurrent L4-5 disc herniation, Dr. Kline noted that Claimant fell into category 2, which generally carries whole[-]person impairment [rating] of 10% to 15%. Dr. Kline then addressed the grade modifiers based upon physical examination, clinical studies, and functional history. Claimant's pain behavior questionnaire and his objective score of 108 yielded a functional history grade modifier of three. The physical examination findings of diminished sensation within the distribution of a nerve root and depressed deep tendon reflexes yielded a physical examination grade modifier of two. [The Magnetic Resonance Imaging (MRI)] study demonstrating recurrent disc herniation was used to place

Claimant in category 2 and could not be used again as a clinical studies grade modifier. As there were no electrodiagnostic studies available, Claimant's clinical studies grade modifier was 0. After the grade modifiers, Dr. Kline calculated the net adjustment score, wherein he began with Claimant in category 2 and applied the grade modifiers for an adjustment score of negative one. A negative one adjustment score placed Claimant in the grade B category and resulted in a whole[-]person impairment rating of 11 % relative to the L4-5 disc herniation.

Dr. Kline reviewed Dr. Santo's October 2, 2020 report. He noted Dr. Santo did not truly contest the calculation of the impairment rating, which is based on factual information. Rather, Dr. Santo opined that Claimant was fully disabled, and she was against the idea of an impairment rating. Dr. Kline noted that Dr. Santo's opinion that Claimant was fully, completely, and permanently disabled meant Claimant was at [MMI]. His functional impairment could not get any worse than fully, completely, and permanently disabled. Dr. Santo's report did not change Dr. Kline's opinion regarding Claimant's whole[-]person impairment rating. Dr. Kline agreed he had records from Dr. Santo from December 2006 through April 2017 at the time he performed his [IRE]. He later received the October 2, 2020 report Dr. Santo authored, but he did not receive Dr. Santo's records between April 2017 and October 2, 2020. Dr. Kline did not believe those records could demonstrate a worsening indicating Claimant was not at [MMI]. [MMI] typically occurs two years following surgical intervention.

(FOF 8.) The WCJ found Dr. Kline's testimony "logical, internally consistent, and well supported by his records review and physical examination." *Id.* 9(c).

On October 8, 2021, the WCJ granted Employer's Modification Petition under Act 111, concluding that Employer met its burden of proof for a modification of Claimant's disability status from total to partial effective August 11, 2020. (WCJ Conclusion of Law (COL) 7). The WCJ also concluded that Employer is entitled to a credit for the weeks of partial disability paid pursuant to the first IRE between September 20, 2011, and November 1, 2016. *Id.* The WCJ recognized that Claimant

7

challenged Act 111's constitutionality but concluded that he lacked the power to adjudicate that challenge. (COL 8).

Claimant appealed from the WCJ's decision to the Board arguing that the WCJ erred in modifying Claimant's disability status to partial disability based on the August 11, 2020 IRE when Employer failed to give Claimant the statutory notice of modification. (Board Op. at 3.) Claimant also argued that Employer failed to meet its burden of proof for a modification because the IRE physician, Dr. Kline, did not have an adequate evidentiary foundation or sufficient understanding of the facts for the IRE or his opinion regarding MMI to be competent. *Id.* at 5. Claimant's final argument before the Board was that Act 111 is unconstitutional and void because it was passed as a special law to provide relief to employers based on an impairment concept unrelated to a claimant's earning power, which does not comply with the legislative scheme of the general WC Act. *Id.* at 11. The Board affirmed the WCJ's decision and order. Claimant now petitions for review in this Court.

## II. Issues

On appeal,[3] Claimant presents two issues: (1) whether Act 111 of 2018, which purports to reinstitute the IRE procedure under the WC Act for injuries occurring prior to October 24, 2018, is unconstitutional and cannot be applied to injuries before that date; and (2) whether the IRE evaluation that does not consider the most recent three years of medical records from Claimant's treating doctor nor the most recent seven years of diagnostic studies can be competent evidence sufficient to support modification of benefits.

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830, 838 (Pa. 2013).

8

## III. Discussion

**Act 111**

In his first issue, Claimant argues that Act 111 is unconstitutional and violates article III, section 32 of the Pennsylvania Constitution.[4] Claimant contends that Act 111 is a *special law* regulating labor because it treats injured claimants who have been entitled to total disability benefits for more than two years differently than those who have been eligible for total disability benefits for a lesser period of time. (Claimant's Br. at 16.) Claimant asserts that Act 111 created a systemic approach to changing claimants' disability benefits by focusing on impairment rather than disability.

Employer responds that this Court has rejected Act 111 constitutionality challenges in *Pennsylvania AFL-CIO v. Commonwealth*, 219 A.3d 306 (Pa. Cmwlth. 2019), *Pierson v. Workers' Compensation Appeal Board (Consol Pennsylvania Coal Company LLC)*, 252 A.3d 1169 (Pa. Cmwlth. 2021), and more recently in *Hutchinson v. Annville Township (Workers' Compensation Appeal Board)*, 260 A.3d 360 (Pa. Cmwlth. 2021). Given this precedent, Employer asks the Court to affirm the Board's order.

This Court has addressed various constitutional challenges to Act 111. First, in *AFL-CIO*, we held Act 111, unlike its predecessor, was not an unconstitutional delegation of legislative authority. 219 A.3d at 319. In *Pierson*, we rejected an argument that the IRE a claimant underwent was premature because fewer than 104 weeks had passed between the enactment of Act 111 and the IRE. In that case, the

---

[4] Article III, section 32 of the Pennsylvania Constitution provides: "The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law: . . . 7. Regulating labor, trade, mining or manufacturing[.]" Pa. Const. art. III, § 32.

9

claimant underwent an IRE and had his disability status modified to partial after the enactment of Act 111. Citing *Rose Corporation v. Workers' Compensation Appeal Board (Espada)*, 238 A.3d 551 (Pa. Cmwlth. 2020), the Court explained that Act 111 plainly provides for credit of weeks of temporary total and partial disability benefits previously paid and that the General Assembly explicitly provided the credit provisions were to be given retroactive effect. *Pierson*, 252 A.3d at 1179-80. *Rose Corporation* also holds that the plain language of Section 3 of Act 111 explicitly gives employers credit for previous weeks of disability benefits paid. 238 A.3d at 563. The claimant in *Pierson*-also asserted the vested rights argument, which was rejected. The Court held that the claimant's "'vested rights' have not been abrogated by Act 111," *id.* at 1180, because "there are reasonable expectations under the Act that benefits may change." *Id.* at 1179. We explained that Act 111 did not automatically strip a claimant of any rights; rather, Act 111 provided employers with a mechanism to modify a claimant's disability status from total to partial. *Id.* In *Hutchinson*, the Court reaffirmed these holdings. 260 A.3d at 366-67. We note that other claimants have invited the Court to revisit these holdings, but we have declined to do so. *See*, *e.g.*, *Sochko v. National Express Transit Service (Workers' Compensation Appeal Board)*, 276 A.3d 1218 (Pa. Cmwlth. 2022); *Hender-Moody v. American Heritage Federal Credit Union (Workers' Compensation Appeal Board)*, 274 A.3d 778 (Pa. Cmwlth. 2022); and *Dohn v. Beck N' Call (Workers' Compensation Appeal Board)*, 264 A.3d 830 (Pa. Cmwlth. 2021).

Claimant relies on *Duffey v. Workers' Compensation Appeal Board (Trola-Dyne, Inc.)*, 152 A.3d 984 (Pa. 2017), which notably was decided before *Protz II*, in support of his argument that Act 111 created a systemic approach to changing claimants' disability benefits by focusing on impairment rather than disability.

10

Specifically, in his brief, Claimant quotes the following excerpt from the case:[5] "the approach of tying the continuation of disability benefits to impairment rating protocols has been described by many physicians and characterized as 'unappealing, if not Orwellian' in commentary. . . ." *Id.* at 995 n.18; Claimant's Br. at 20. However, Claimant conveniently fails to include the rest of the language from the footnote, where the Pennsylvania Supreme Court stated "[w]e make this observation not as an adoption of such viewpoint, but rather, to add perspective to our adherence to the specific statutory directives embodying the legislative policy choices that have been made in the impairment-rating arena." *Id.*

Claimant's argument[6] that Act 111 is a *special law* enacted in violation of article III, section 32 of the Pennsylvania Constitution has not been specifically

---

[5] The full language from the case is as follows:

> In this regard, we note that the approach of tying the continuation of disability benefits to impairment rating protocols has been decried by many physicians and characterized as "unappealing, if not Orwellian" in commentary. David B. Torrey & Andrew E. Greenberg, West's Pa. Prac., Workers' Compensation §6.51 (2008 & July 2016 Supp.) (quoting Nortin M. Hadler, Impairment Rating in Disability Determination for Low Back Pain: Placing the AMA Guides and the Quebec Institute Report in Perspective, in John F. Burton, Jr. & Timothy P. Schmidle, Workers' Compensation Desk Book I-132 (LRP Pubs. 1992)); *see also* [*id.*] §6:48:50 (discussing controversy surround the AMA Guides, including the criticism that they lack any empirical basis). We make this observation not as an adoption of such viewpoint, but rather, to add perspective to our adherence to the specific statutory directives embodying the legislative policy choices that have been made in the impairment-rating arena.

*Duffey*, 152 A.3d at 995 n.18.

[6] Claimant specifically argues:

> [G]iven that [] Employer received a credit for 'partial disability' benefits paid from September 20, 2011 to November 1, 2016 and his benefits were modified effective August 11, 2020, his indemnity

**(Footnote continued on next page…)**

11

addressed by this Court in the past. However, we find the argument without merit because Act 111 did not create an arbitrary classification, and Claimant's equal protection rights are not violated.

Pennsylvania's proscription against local or special laws is currently found in article III, section 32, and was first adopted in the Pennsylvania Constitution of 1874. *Pennsylvania Turnpike Commission v. Commonwealth of Pennsylvania*, 899 A.2d 1085, 1094 (Pa. 2006). Like many constitutional provisions, it was adopted in response to immediate past abuses. *Id.* The main purpose behind article III, section 32 was "to put an end to the flood of privileged legislation for particular localities and for private purposes which was common in 1873." *Id.* (quoting *Haverford Township v. Siegle*, 28 A.2d 786, 789 (Pa. 1942)). Over the years, the underlying purpose of article III, section 32 has been recognized to be analogous to federal principles of equal protection under the law, *see* U.S. Const. amend. XIV, § 1, and, thus, special legislation claims, and equal protection claims have been reviewed under the same jurisprudential rubric. *Id.* The common constitutional principle at the heart of the special legislation proscription and the equal protection clause is that like persons in like circumstances should be treated similarly by the sovereign. *Id.*; *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corp.)*, 883 A.2d 518, 532 (Pa. 2005). Nonetheless, it is settled that equal protection principles do not "vitiate the Legislature's power to classify, which necessarily flows from its general power to enact regulations for the health, safety, and welfare of the community," nor do these principles "prohibit differential treatment of persons having different needs." *Pennsylvania Turnpike Commission*, 899

---

benefits will soon run out. There is no rational reason why [Claimant] should be treated differently regarding his right to receive ongoing workers' compensation indemnity benefits under the law than another injured worker who has not yet received 104 weeks of benefits.

(Claimant's Br. at 21.)

12

A.2d at 1094. There are a legion of cases recognizing that a legislative classification which appears to be facially discriminatory may nevertheless be deemed lawful if the classification has a rational relationship to a legitimate state purpose. *Id.* at 1095. Furthermore, legislative classifications must be founded on "real distinctions in the subjects classified and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition." *Id.* (quoting *Harrisburg School District v. Hickok*, 761 A.2d 1132, 1136 (Pa. 2000)). Finally, in analyzing a special legislation/equal protection challenge, a reviewing court is free to hypothesize reasons the General Assembly might have had for the classification of certain groups. *Id.*

The WC Act is remedial legislation designed to compensate claimants for earnings loss occasioned by work-related injuries. *City of Erie v. Worker's Compensation Appeal Board (Annunziata)*, 838 A.2d 598, 601 (Pa. 2003). As previously discussed, Act 111 was enacted simply to repeal Section 306(a.2) of the WC Act invalidated by the Supreme Court and reenact the language clarifying the guidelines to be used for IREs without proposing any substantive changes. *Rose Corporation*, 238 A.3d at 552-53. The legislative intent behind Section 306(a.2) was to ensure efficiency within the worker's compensation system. *Diehl v. Workers' Compensation Appeal Board (I.A. Constr.)*, 607 A.3d 230 (Pa. 2010).

Claimant's constitutional argument is asserted without supporting references to legal authority or facts that Act 111 unconstitutionally violates his right to equal protection. Not only were the cases cited by Claimant in his brief decided prior to *Protz II*, his assertion that Act 111 is a *special law* passed in direct violation of article III, section 32 of the Pennsylvania Constitution is not supported by any relevant authority. There is no evidence that Claimant was treated differently than anyone else who is eligible for workers' compensation benefits; therefore, his equal protection

13

rights could not have been violated. Any employee who has received total disability compensation pursuant to the WC Act for a period of 104 weeks is required to submit to an IRE to determine the degree of impairment due to compensable injury. 77 P.S. § 511.3(1). If the degree of impairment is determined to be less than 35 % pursuant to the AMA Guides, the employee shall then receive partial disability benefits. 77 P.S. § 511.3(2). The change in disability status does not change the amount of compensation during the 500 weeks of partial disability. 77 P.S. § 511.3(3).

Here, Claimant underwent an IRE which resulted in an impairment rating of 11%, therefore his disability status was modified to partial disability. Employer then properly received credit for the weeks of partial disability paid between September 20, 2011 and November 1, 2016, pursuant to the plain language of Section 3 of Act 111. *Rose Corporation*, 238 A.3d at 563. Therefore, nothing in the record supports the assertion that Claimant was somehow treated differently, and his argument is without merit.

**IRE**

Claimant argues that because Dr. Kline failed to obtain and review Claimant's medical records of treatment for the most recent three years immediately before the IRE and the diagnostic studies in the seven years immediately before the IRE violates foundational requirements for an IRE by the AMA Guides. (Petitioner's Brief at 24.) Even though Claimant submits that the AMA Guides do not set forth specific medical records physicians must obtain, review, or consider, the AMA Guides state that the IRE should include a comprehensive, accurate medical history and a review of all pertinent records. *Id.* Claimant also asserts that the AMA Guides also state that the physician needs to review and document actual studies and findings from relevant diagnostic studies, including laboratory tests, x-rays, Computed Tomography

14

(CT) scans, MRI scans, ultrasound exams and Electromyography/Nerve Conduction Studies (EMG/NCS). *Id.* Claimant argues that Dr. Kline did neither, resulting in inadequate foundation for the IRE testimony. *Id.*

It is well established that the WCJ is the factfinder, and it is solely for the WCJ to assess credibility and to resolve conflicts in the evidence. *Hawbaker v. Workers' Compensation Appeal Board (Kriner's Quality Roofing Services & Uninsured Employer Guaranty Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017). Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. *Id.* In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. *Id.* As such, the WCJ may reject the testimony of any witness in whole or in part. *Id.* In this regard, "[d]etermining the credibility of the witnesses is . . . not an exact science, and the ultimate conclusion comprises far more than a tally sheet of its various components." *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 195-96 (Pa. Cmwlth. 2006) (declining to "dissect and analyze each of the WCJ's reasons for his credibility determination"). For purposes of appellate review, it is irrelevant whether there is evidence to support contrary findings; if substantial evidence supports the WCJ's necessary findings, those findings will not be disturbed on appeal. *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015).

In this case, Employer submitted the testimony of Dr. Kline, who is board certified in physical medicine, rehabilitation, and pain management and performed the IRE of Claimant on August 11, 2020. Dr. Kline took Claimant's history, reviewed medical records and diagnostic studies, and performed a physical examination. Dr. Kline understood that Claimant's 2005 work injury was a recurrence of an earlier L4-

5 disc herniation with radicular symptoms, for which he underwent decompression surgery. The work injury also included arachnoiditis. Dr. Kline testified that based on the work injury, Claimant had a whole person impairment rating of 11% under the AMA Guides. Dr. Kline opined that Claimant was at MMI, explaining that Claimant was 15 years out from the injury and had undergone surgery, and that his condition was stable and not likely to change for the better or worse throughout the course of the next year, with or without additional medical treatment. Dr. Kline reviewed an October 2, 2020 report from Claimant's treating physician, Dr. Santo, who believes that Claimant is fully and completely disabled despite any impairment rating, and that his condition is steadily worsening. Dr. Kline testified that Dr. Santo's report did not change his medical opinion and that Dr. Santo appears to have limited knowledge of the AMA Guides' definition of MMI. On cross-examination, Dr. Kline testified that the most recent diagnostic test he reviewed was an MRI from 2013. In addition, Dr. Kline reviewed Dr. Santo's records from 2006 to 2017, as well as the October 2020 report, but there were three years of records, from 2017 to 2020, that Dr. Kline did not see. Nevertheless, Dr. Kline testified that he discussed Claimant's current treatment and symptoms with him and had enough information to perform the IRE. Dr. Kline also reiterated his opinion that Claimant "is truly at [MMI] . . . I don't really think that's even debatable, at this point. I mean - - even two years following the surgical intervention, it would generally render you at [MMI]. At this point, he is now 15 years out from the injury[.]" (Dr. Kline Dep., 12/22/2020 at 10-11, 13-33, 36, 38-39, 41-48, 55-60, 62-63, 108; R.R. at 121a.) The WCJ accepted as credible Claimant's testimony regarding his work injury, the treatment he received thereafter, the fact that it has been years since he discussed possible surgery with Dr. Santo, and the fact that except for a change in medication, his treatment has not changed over the past five years. (FOF

16

9(a).) The WCJ accepted Dr. Kline's testimony as credible and consistent with the AMA Guides, including his opinion that Claimant was at MMI. *Id.* 9(c). The WCJ found there was no medical evidence of record indicating that Claimant was not at MMI under the AMA Guides. *Id.* Based on the credible evidence, the WCJ found that Dr. Kline conducted the August 11, 2020, IRE in accordance with the AMA Guides and that Claimant was at MMI relative to his work injury and had a whole person impairment rating of 11 %. *Id.* 9(d).

Upon review, we determine that the WCJ did not err in granting Employer's Modification Petition based on Dr. Kline's IRE. We find Claimant's second argument without merit.

## IV. Conclusion

Upon review, we affirm the Board.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven Conrad,                        :
              Petitioner    :
                               :    No.  557 C.D. 2022
           v.                 :
                               :
Department of Transportation          :
(Workers' Compensation                :
Appeal Board),                        :
              Respondent    :

## ***ORDER***

AND NOW, this 26th day of February, 2024, the order of the Workers' Compensation Appeal Board, dated May 12, 2022 is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge